[No. 1793.]

UPDEGRAFF ET AL. v. LESEM.

1. PRACTICE—VENUE—MINES AND MINING—LESSOR AND LESSEE.
The complaint in an action fixes the character of the suit and deter-
mines the venue. In an action by a lessee of a mine against his
lessors for damage for an alleged conversion of machinery and ap-
pliances placed by the lessee for the purpose of working the mine,
where the complaint charged the wrongful conversion by defend-
ants of personal property belonging to plaintiff the cause is properly
brought in the county where defendants or any of them reside, and
the venue will not be changed to the county in which the mine is
located on the ground that it.involved an interest in real estate, since
if it should be determined that the subject-matter of the action is
real estate, no recovery could be had under the complaint.
2. PRACTICE—PLEADING—MINES AND MINING—LESSOR AND LESSEE.
In an action by a lessee of a mine against the lessors for damage for an
alleged wrongful converson of machinery and appliances belonging
to plaintiff, an allegation concerning the lease was only matter of
inducement to show how the property of plaintiff happened to be
upon the land of defendants and was not material to the action,
and the complaint was not subject to demurrer on the ground that
it failed to allege the due execution of the lease. Neither was it
necessary to allege that the lease authorized the removal of the
machinery by plaintiff. It was sufficient to allege ownership and
conversion of the property, and the fact of the lease and proceed-
ings under it would be admissible in evidence as explanatory of
plaintiff's claim.
3. PRACTICE—PARTIES—MINES AND MINING—LESSORS AND LESSEES.
Where there were two lessees and several lessors parties to the contract
of a mining lease but one of the lessees had no interest in the ma-
chinery and appliances used for working the mine, he was not a
necessary or proper party plaintiff to an action by his colessee
against the lessors for an alleged wrongful conversion of the ma-
chinery, and a lessor who did not participate in the conversion was
not a necessary or proper party defendant.
4. LANDLORD AND TENANT—TRADE FIXTURES—RIGHT OF REMOVAL.
The rule as between grantor and grantee, and mortgagor and mortgagee,
that whatever is once annexed to the freehold becomes part of it
and passes with the land, does not apply as between landlord and
tenant to articles affixed by the tenant to the premises for the pur-
pose of carrying on the business for which the premises were
leased. Such articles are denominated trade fixtures and are remov-

able by the tenant no matter how firmly the articles may be attached to the land.

5. MINES AND MINING—LANDLORD AND TENANT—TRADE FIXTURES.

A shaft house, erected by the lessee of a mine and an engine, boiler and other machinery, appliances and tools placed upon the mining premises by the lessee for the purpose of carrying on the business for which· the lease was taken are trade fixtures and are removable by the tenant.

6. LANDLORD AND TENANT—TRADE FIXTURES—RIGHT OF REMOVAL—TERMINATION OF LEASE.

The rule that a tenant must exercise his right of removal of his trade fixtures during his term of lease applies only where the term expires by lapse of time or is terminated by the voluntary surrender or abandonment of the premises by the tenant, and does not apply where the tenancy is terminated by the act of the landlord and against the consent of the tenant, and where the tenant is dispossessed without being given time to remove his fixtures. In such case the tenant has a reasonable time after the termination of the tenancy for the exercise of his right, and his right to remove his fixtures is not lost by a forfeiture of the lease.

7. SAME—REASONABLE TIME.

Where a lessee of a mine was involuntarily dispossessed and the lease terminated by the lessor, nine months' delay in exercising his right to claim his trade fixtures was not an unreasonable time where the situation of the parties in respect to the property claimed, was not changed during the delay and no injury was caused thereby.

8. LANDLORD AND TENANT—FORFEITURE—TENANTS IN COMMON.

Where several owners as tenants in common leased a mine, one of the lessors could not declare a forfeiture of the lease, except as to his own interest therein, without special authority from his colessors, and a notice of forfeiture by one of such lessors in which he did not purport to act for his colessors could affect only his individual interest, and so far as his colessors are concerned the lease would remain in force.

9. PRACTICE—EVIDENCE—PRESUMPTIONS.

Where a cause was tried by the court and there was sufficient evidence to which no objection was made to sustain the findings of the court, it will be presumed that improper evidence, admitted, was not considered by the court.

10. PRINCIPAL AND AGENT—DECLARATIONS OF AGENT.

Declarations of an agent are binding on his principal only when he is engaged in the transaction of the business of his agency.

11. MINES AND MINING—LESSOR AND LESSEE—CONVERSION OF PROP-ERTY—EVIDENCE.

In an action by a lessee of a mine against the lessors for damage for the alleged conversion of mining machinery owned by the lessee,

evidence that the mine was not properly worked by the lessee was inadmissible as a defense to the action.

12. DAMAGES—CONVERSION—WRONGFUL DETENTION.

In an action for damages for wrongful conversion and detention of personal property, damages are allowable for the wrongful detention equal to the legal interest on the value of the property converted from the time of the conversion to the time of the judgment.

*Appeal from the District Court of Arapahoe County.*

Mr. J. E. HAVENS and Mr. J. McD. LIVESAY, for appellants.

Messrs. WELLS, TAYLOR & TAYLOR, for appellee.

THOMSON, J.

Samuel Lesem brought this action against Joseph S. Updegraff, Curtis P. Updegraff, Nelson Halleck and William R. Havens, to recover damages for the wrongful taking by the defendants and their conversion to their own use, of certain articles of personal property belonging to the plaintiff. The complaint alleged that on the 1st day of October, 1889, the plaintiff and one Byron J. Smith took from the defendants and Elizabeth Updegraff a written lease of certain mining premises for the term of three years from that date, with the privilege of purchasing the same at any time during the term, or while the lease should remain in force and unforfeited, for the sum of $30,000. The substance of the lease is set forth in the complaint. It provided that the lessees should immediately commence work upon the premises; continue it with reasonable diligence, and in a thorough and workmanlike manner; keep accurate accounts; render monthly statements to the lessors, showing the amount and yield of the ore taken from the premises; and pay monthly to the lessors the rents or royalties reserved in the lease. The contract also provided that in case of failure by the lessees to comply with any of their agreements, it should be lawful for the lessors to declare the lease void, and to enter

upon, and take possession of, the premises. The complaint
further alleged that in accordance with the terms of the lease,
the plaintiff and Smith entered upon the property, and worked
it diligently and in the manner required, for a certain period
of time, at the expiration of which Smith " dropped out " of
the lease, and the plaintiff continued the work at his own ex-
pense; that when the plaintiff and Smith took possession of
the premises, they were without improvements, and that the
plaintiff, at his own cost, erected a shaft house upon them,
and, for their proper working, supplied them with an engine,
boiler, hoister, rope, belts and buckets, and the tools and ap-
pliances requisite for the operation of the machinery, and
the working of the mine ; that the shaft house was built,
and the engine placed, upon a stone foundation, and the
boiler rested upon brick, and was incased in brick and mortar ;
that in April, 1891, the plaintiff was notified by the defend-
ant, J. S. Updegraff, that the lease was forfeited, and that he
would not be permitted upon the premises; and that on the
20th day of March, 1892, the defendants wrongfully took
possession of the several articles which the plaintiff had
placed upon the property, and unlawfully converted the same
to their own use. He laid his damages at $3,000. The
suit was commenced in the district court of Arapahoe county.

The defendants moved for a change of venue, and also de-
murred to the complaint. The ground of the motion was that
the action was brought for the determination of a form of
right or interest in real property, which property was situate
in Clear Creek county ; and that, hence, Clear Creek county
was the proper county for the trial of the cause. The motion
was accompanied by the affidavit of the defendant Updegraff,
showing that the shaft house, engine, boiler and hoister, and
other appliances, were made fast and attached to the land,
and were not portable. The grounds of demurrer were, first,
that the complaint did not state a cause of action, in that, be-
ing based upon a written lease, it did not allege that the lease
was executed by either the plaintiff or the defendants, nor
set forth a copy of the lease ; and in that it did not allege that

the lease contained any provision allowing the lessees to remove improvements placed by them on the leased premises; and, second, that it appeared that there was a defect of parties plaintiff and defendant, because the complaint did not allege any assignment by Smith to the plaintiff of his interest in the lease, and, without such assignment, Smith was a necessary party plaintiff; and because the complaint did not allege any assignment by Elizabeth Updegraff of her interest in the lease to the defendants or any one else, and, hence, she was a necessary party defendant. The motion was denied and the demurrer overruled.

The theory of the motion for a change of venue was that the suit was brought for the determination of some kind of interest in real estate, and, hence, should be tried in the county in which the real estate was situate. If this were such an action as the motion supposes, unquestionably it should be tried in Clear Creek county, and the change prayed for should have been ordered. Civil Code, secs. 25, 29. But the theory was wrong. No interest in real estate was involved. No question affecting title to real estate, or right to possession of real estate, or ownership of any interest, legal or equitable, in real estate, could be tried under the allegations of the complaint. That pleading was framed upon the hypothesis that the articles, the conversion of which was charged, were not part of the real estate, but were personal property; and if it should be determined that they were not personal property, but had been incorporated into the real estate, there could be no recovery by the plaintiff. The complaint fixed the character of the suit; and it charged the wrongful conversion by the defendants of personal property belonging to the plaintiff. Such an action is to be tried in the county in which the defendants, or any of them, may reside when it is commenced. Civil Code, sec. 27. It appears from the affidavit of Updegraff, that one of the defendants, William R. Havens, was, when the suit was brought, a resident of Arapahoe county. The cause was therefore triable

in that county, and the motion for a change of venue was properly denied.

The demurrer assumed that the contract of lease was the foundation of the suit; and the deduction was that an allegation of its due execution, or something equivalent to an allegation of its due execution, was necessary; and that Smith, being one of the lessees, and Elizabeth Updegraff, one of the lessors, the former was a necessary party plaintiff, and the latter a necessary party defendant. We are not prepared to say that the statement that the plaintiff and Smith took a written lease from the defendants and Elizabeth Updegraff, would be an insufficient allegation of the execution of the instrument, even if the purpose of the suit had been the enforcement of its provisions, or the recovery of damages for their violation; but we are prepared to say that for the purposes of this suit, it was amply sufficient. The action was not based upon the lease. No complaint was made of the violation by the defendants of any of its covenants. The statements concerning it amounted only to matter of inducement. They showed how it was that property of the plaintiff happened to be upon land of the defendants. But the gravamen of the action was the conversion of the property. The questions to be tried related to its ownership by the plaintiff, and its wrongful taking by the defendants. The statements concerning the lease might have been omitted, without injury to the complaint. Allegations of ownership by the plaintiff, and of conversion by the defendants, would have been enough; and the facts of the lease, and the proceedings under it, would have been admissible in evidence as explanatory of the claims of the parties. But the lease having been set forth, and the purchase and placing of the machinery alleged, a statement that the lease authorized the removal of the machinery by the plaintiff, was unnecessary. As we shall see hereafter, *prima facie*, the plaintiff, as a tenant, had the legal right to remove the machinery without special permission; and whether facts existed which would defeat the right, was a question to be determined upon the evidence. According to the allegations

of the complaint, Byron J. Smith was not a proper party plaintiff, and Elizabeth Updegraff was not a proper party defendant. Smith had no interest in the machinery. It was the sole property of the plaintiff, and he alone could sue for its conversion. Elizabeth Updegraff did not participate in the wrong, and therefore incurred no liability to the plaintiff. There would have been a misjoinder of parties, if the former had been a plaintiff, or the latter a defendant. There was no error in the disposition made by the court of the demurrer.

The answer averred that the plaintiff and his colessee failed of compliance with the terms of the lease in respect to their manner of working the mine, the rendering of statements showing the amount of ore taken from the premises, and the payment of rental or royalty; that about the 15th day of August, 1890, they refused to work the property, and abandoned it together with all improvments upon it; that by reason of the failure of the lessees to comply with the terms of the lease, the defendants declared the lease forfeited, and entered upon and took possession of the premises; and that by reason of the manner in which the shaft house, machinery, appliances and connections, were annexed to the land, and by reason of the failure of the lessees to comply with the terms of the lease, the shaft house, machinery, appliances and connections became part of the realty, and as such became the property of the defendants.

The case was tried without a jury, and after hearing the evidence, the court found that the machinery, tools and appliances, were trade fixtures; that they were placed upon the property with no intention to permanently affix them to the land; that they could be removed without injury to the freehold; that the machinery and other articles belonged to the plaintiff; that he was entitled to remove them within a reasonable time after the forfeiture of the lease; and that he attempted to remove them within a reasonable time, but was prevented from doing so by the defendants. The judgment followed the findings and was for the plaintiff. There is no dispute concerning the execution of the lease, and the

occupation of the property under it by the plaintiff and his cotenant. The evidence was that the machinery and other articles in question, were placed upon the property, and were purchased by the plaintiff with his own money. The testimony for the defendants was that the boiler and engine rested upon foundations of solid masonry to which they were attached by bolts, and secured by nuts' screwed upon the bolts. It was testified on behalf of the plaintiff that they could be taken off the foundations simply by unscrewing the nuts, and without injury to the property. As to how long the lessees worked the mine there was a conflict in the testimony. It was in evidence for the plaintiff that the property was worked directly by him until sometime in December, 1889, or January, 1890; that afterwards it was worked under sub-leases given by him, and that work on the property ceased sometime in the early part of 1891. The last statement required by the lease, was furnished by the plaintiff to the defendants on the 31st day of March, 1891. It showed sales of ore of the net value of $1,063.02. On the same day the plaintiff paid the royalty due on that sum. The ore had been taken out sometime previously. There was testimony for the defendant that the waste rock broken by the plaintiff in the mine, was thrown into certain drifts instead of being put on stulls or being hoisted to the surface; and that this was improper work, and, therefore, a violation of the terms of the lease. No other violation was shown. On the 18th day of April, 1891, the defendant Updegraff caused to be served upon the plaintiff the following notice:

"CENTRAL CITY, COLORADO, April 3, 1891.

"To SAMUEL LESEM and to BYRON J. SMITH:

"You and each of you are hereby notified that the lease and option to purchase you hold on the Veto lode mine, situate in Idaho mining district, Clear Creek County, Colorado, being mineral entries numbers 24 and 641, and survey lots numbers 55 and 315, is forfeited by you, for the reason that you have not complied with the terms and agreements contained in said

lease, and you and each of you are hereby notified to keep off said premises.

"J. S. UPDEGRAFF."

On the next day, Updegraff took possession of the property, locked the doors of the shaft house, and carried away the keys.   He visited the premises frequently during 1891 to see if any one had broken in, but made no attempt to operate the mine.   About the 23d day of January, 1892, the plaintiff sold the machinery, and gave the purchaser an order for its removal.   The purchase price was paid.   The plaintiff notified the defendant Updegraff, by letter dated January 23, 1892, of the sale or contemplated sale, and received from the latter a reply saying that the defendants owned the building, machinery and all improvements on the mine, and had a party in charge, with instructions to allow no one to remove anything from the premises.   The plaintiff then returned the purchase money he had received, and, on the 30th day of March, 1892, commenced this suit.

The general rule respecting fixtures unquestionably is that whatever is once annexed to the freehold becomes part of it, and passes with the land.   This rule obtains as between grantor and grantee, mortgagor and mortgagee, and persons sustaining certain other relations to each other.   1 Washburn on Real Property, 4th Ed. *7.   But there is an exception to the rule, which is probably as old as the rule itself, and which is applied as between landlord and tenant, to articles affixed by the latter to the premises for the purpose of carrying on the business for which the premises were leased.   Such articles are denominated trade fixtures, and are removable by the tenant.   *Lawton v. Lawton*, 3 Atk. 13 ; *Van Ness v. Pacard*, 2 Pet. 137 ; *Andrews v. D. B. Co.*, 132 N. Y. 348, 353 ; *Ferry Co. v. Railway Co.*, 142 U. S. 396 ; *Conrad v. Mining Co.*, 54 Mich. 249 ; *County Commissioners v. Brown*, 2 Colo. App. 473 ; *Ross v. Campbell*, 9 Colo App. 38.   And it does not matter much how firmly the articles may be attached to the land.   In *Ferry Co. v. Railway Co.* the court said : "What-

ever is affixed to the land for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the sole purposes of trade, may not be removed at the end of the term." The articles in question here were placed upon the mining premises for the purpose of carrying on the business for which the lease was taken,—that is, for the purpose of working the mine. It was by means of them that the operations which the lease authorized were to be conducted. They were therefore trade fixtures. That they were intended merely to facilitate the work in which the lessees proposed to engage under the provisions of their lease, and that it was not their intention to incorporate them into the realty, appears to us to be clearly evident from the facts. *Conrad v. Mining Co.*, *supra*; Tyler on Fixtures, 115.

But the general language of the books is that the right of the tenant to remove his fixtures must be exercised during his term of lease. And it is said that this rule applies not only to cases where the tenancy terminates by the lapse of time, but also to cases where it is determined by the tenant's own act, as where he surrenders his lease to his landlord without reservation, or abandons the premises under such circumstances as to indicate a purpose not only to relinquish his possession and control, but also to permit the resumption of possession and control by the landlord. Ewell on Fixtures, 144, 145. In this case, the tenancy had not terminated by lapse of time, nor were the premises abandoned. The possession was not voluntarily relinquished, and there was no evidence of an intention to relinquish it. Down to the time when Updegraff locked up the shaft house, the plaintiff was in actual possession of the premises ; and by the act of Updegraff at that time, he was forcibly dispossessed. If, for present purposes, we concede that the notice served by Updegraff upon the plaintiff had the effect of terminating the tenancy, then, as it was not by the act of the plaintiff that the tenancy was terminated, the rule to which we have referred

does not apply.   Where the tenancy expires by the terms
of the lease, or is terminated by the voluntary act of the ten-
ant, the situation is within his control, and it is his own
fault if he fails to remove his fixtures in time.   But where
a period is put to his tenancy by the act of his landlord, and
against his consent, the case is different.   His term may end
so suddenly that it is impossble for him to make any provi-
sion for taking away his property.   In this case the notice
of forfeiture was served on one day, and possession taken the
next; and it is manifest that the plaintiff had no opportu-
nity to remove his machinery.   It belonged to him, he had
the right to remove it, and his right could not be cut off,
except by his own act or neglect.   No opportunity having
been afforded him of asserting his right prior to the termi-
nation of his tenancy, unless he could do so afterwards,
there would be a failure of justice.   The law does not exact
impossibilities, and in cases where the tenancy is of uncertain
duration, or is liable to be determined by the happening of
some contingent or uncertain event on which it depends, or
by the act of the landlord, the tenant has a reasonable time
after the termination of the tenancy for the exercise of his
right.   Ewell on Fixtures, 141, 147.

In the case of *Mickle v. Douglass*, 75 Iowa, 78, the defend-
ants had leased to the plaintiffs a coal mine, reserving royalty
for all coal mined.   The lease provided that if the plaintiffs
failed to pay the stipulated royalty within thirty days after
it became due, and to faithfully perform the conditions of the
lease, then the lease and all rights under it should be forfeited,
and the defendants might so declare, and in a lawful manner
take possession of the mine and all the property connected
with it.   Afterwards, the defendants elected to declare the
lease forfeited on the ground that the plaintiffs had failed to
comply with the terms, conditions and stipulations of the
lease, particularly in not paying the royalty or rent.   In re-
sponse to the declaration of forfeiture, the plaintiffs surren-
dered the premises, but protested that by the surrender they
did not intend to waive their right to remove their property

within a reasonable time. The lease provided. that any new engines, boilers or other machinery, buildings, houses and other property, placed in or upon the mine, and real estate, which was not in the nature of repairs, might be removed by the plaintiffs at the termination of the lease, unless all rights thereto had been forfeited by the plaintiffs by a forfeiture of the lease. The plaintiffs had erected certain houses on the premises which were not in the nature of repairs, and after their surrender of possession, demanded the houses from the defendants, and failing to obtain the property, brought suit to recover its value. The court held that the forfeiture clause applied to the possession of the mine and the rights of the plaintiffs under the lease, but not to property placed on the premises by the plaintiffs, and used for mining purposes ; that the right to remove the buildings within a reasonable time after the lease was terminated by a forfeiture for non-payment of royalties, was not lost by the forfeiture of the lease ; and that the right to remove the buildings having been denied, an action might be maintained to recover their value. The clause permitting removal of the property at the termination of the tenancy, conferred no right upon the lessees which they would not have had without it, so that we regard the decision as pertinent. But independently of any direct authority, upon the hypothesis that the tenancy was in fact and in law terminated by the notice of forfeiture which was served on the plaintiff, and in conformity with general and well established principles, we should hold that as it was by the act of the defendants that a removal of the machinery from the mine before the termination of the tenancy was rendered impossible, they cannot be heard to deny the right of the plaintiff to a reasonable time afterwards in which to exercise his right. Now a reasonable time is not a fixed period. What would be a reasonable time in one case, would not be a reasonable time in another ; so that in every case the question, what is a reasonable time, must be determined from facts and circumstances peculiar to that case. The nature of the act to be done, the situation of the parties, a duty or want of

duty upon one to act promptly, and the effect of delay upon the rights of the other, must all be considered. In this case, between the 18th day of April, 1891, and the 22d day of January, 1892, no attempt was made by the plaintiff to remove his property. A case might exist in which such delay would be utterly inexcusable. The party against whom the right was asserted, might, in the mean time, have so moved that a retreat would involve him in annoying, if not worse, complications, and cause him inconvenience, if not loss. But the evidence here shows that during that time the defendants did nothing at all ; that their situation in respect to the property was exactly the same on the 22d of January, that it was on the 18th of April ; that there was in the mean time no manner of change in their position ; and that by reason of the delay they suffered no injury whatever. Upon this showing, we agree with the trial court that the time taken by the plaintiff in which to move, was not unreasonable.

In arriving at our conclusion, we have proceeded upon an hypothesis furnished to us by the defendants, namely, that in declaring the lease forfeited, Updegraff acted not only for himself, but for his colessors ; that, therefore, by his declaration, the lease was forfeited, and the tenancy terminated ; and, upon ground of their own choosing, it is our opinion that the plaintiff should prevail. But we are unable to admit that their position is well taken. These lessors were tenants in common. Each one held his undivided interest in his own right. Their relations to each other were not such that in respect to the common property, one could act for all without special authority. Upon the face of the notice of forfeiture, Updegraff was acting for no person but himself. He did not purport to act as agent for the others, and there was no evidence that he was such agent. His act could therefore be effective only as far as his own individual interest was concerned. *Pickard v. Perloy*, 45 N. H. 188 ; *Right v. Cuthell*, 5 East, 491 ; Freeman on Cotenancy, § 180 ; Taylor's Landlord & Tenant, 479. As to the others, the tenancy was not terminated ; and until by their answer they

adopted the proceeding of Updegraff, and made it their own, they assumed no responsibility on account of the notice of forfeiture. Although Updegraff had excluded the plaintiff from the premises, a tenancy which entitled the latter to possession continued to exist, and was in existence when this suit was commenced; so that the question within what time after forfeiture the plaintiff should have undertaken to remove his property, was, in reality, not in the case.

Errors are assigned upon the admission and exclusion of evidence. To specially notice all the objections would be impracticable, but it is unnecessary. Some of the rulings were of at least doubtful propriety; but the cause was tried by the court, and the presumption is that improper evidence was not considered by it. There was enough to which no objection was made to sustain the findings and judgment of the court. In our own consideration of the case, the evidence, the propriety of which is disputed, has been almost entirely ignored; and we have allowed weight to none of it which we did not regard as correctly admitted.

Defendant Updegraff was asked by his counsel as follows: "Now state what conversation took place between you and Mr. Bolsinger at that time, if any, concerning this matter." A witness, Robert Williams, was asked whether the mine was worked in a workmanlike manner by the lessees, and what a Mr. Thomas said concerning the work; and Updegraff was asked whether or not Mr. Wisebart did anything in behalf of Mr. Lesem in regard to the property that was covered by the lease. The court refused to permit these questions to be answered. Respecting what matter counsel desired Mr. Bolsinger to answer, we were unable to satisfy ourselves from the context, but it probably concerned the manner in which the lessees had worked the mine. Mr. Bolsinger had been manager of the mine for them. At the time of the supposed conversation, the mine was not being worked at all, and Mr. Bolsinger was not acting as manager. The declarations of an agent are binding upon his principal only when he is engaged in the transaction of the business of his

agency.   Mr. Thomas was a foreman employed by Bolsinger upon the mine, and his declarations were of no more importance than the declarations of any other of Bolsinger's employees.   What the question in relation to Wisebart meant, there was nothing on its face to indicate.   Apparently it was inmaterial, and counsel did not undertake to show how it could become material by a statement of what they proposed to prove.   See *Farwell v. McGraw*, 13 Colo. App. 467.   But, in addition to what we have said, for any purpose of this case, it was a matter of no consequence in what manner the mine was worked.   No such question was in issue.   Improper work would have been good cause for declaring the lease forfeited, but until a legal declaration of forfeiture was made, the tenancy existed.   The plaintiff owned the articles in controversy, and the only questions were whether a forfeiture had been declared, and, if so, whether the plaintiff claimed his property within a reasonable time after the event. Misworking of the mine would not affect his title, and would constitute no objection to a recovery by him.   The lease provided what the remedy of the lessors should be for improper work, or any other violation of the terms of the lease, and that remedy was not the retaining by them of the improvements.   The court certainly did not err in the rejection of the evidence.

Complaint is made that the court permitted evidence in rebuttal which should have been given in chief.   The allowance of such evidence is very largely within the discretion of the trial court; and such discretion is never interfered with by appellate courts, without some better reason than is urged here.   But if it was error to admit the evidence, the error was harmless.   The new proof added nothing to the case as it had been made.   As affecting the only questions upon the resolution of which the fate of the controversy depended, it was without materiality.

The reply by Updegraff to the plaintiff's letter of January 23, 1892, was evidence of a conversion by him of the property; and the other defendants, by adopting his act in their an-

swer, made it their own. The court found the value of the property at the time of the conversion to be $1,500, and there was evidence to justify the finding. The court further allowed damages for the detention of the property in the sum of $696, being equivalent to the legal interest on its value from the date of the conversion. There was no error in this. The rule in this state is that damages are allowable for the detention equal to the legal interest on the value of the chattels converted from the time of the conversion to the time of judgment. *Smelting & Refining Co. v. Tabor*, 13 Colo. 41 ; *Sutton v. Dana*, 15 Colo. 98 ; *Perkins v. Marrs*, 15 Colo. 262.

We find no error in this record which would warrant us in reversing the judgment, and it is therefore affirmed.

*Affirmed.*