[No. 2339.]

## CARPER V. RISDON.

1.  **Landlord and Tenant—Fixtures—Removal.**

     The rule that whatever is affixed to the land becomes part of the freehold, does not apply as between landlord and tenant. Articles affixed by a tenant to the demised premises, for the purpose of carrying on the business for which they are leased, are removable by him, however firmly they may be attached. But the removal must be effected during the term of the lease, if it remains in force for its full term; or, if it is terminated by the act of the landlord before the time limited by itself for expiration, within a reasonable time after it is so terminated.

2.  **Landlord and Tenant—Fixtures Left on Premises at Request of Landlord—Removal.**

     Where machinery attached to leased premises by the tenant is permitted to remain after the expiration of the term, at the request of the landlord, the question of reasonable time within which the tenant may remove the same, does not arise.

3.  **Same.**

     Where, after the expiration of the term of a lease, the grantee of the landlord recognized the right of the tenant to remove certain machinery attached to the premises, and requested him not to do so, and leased the machinery from said tenant, and agreed to pay rent for the same, he is estopped to deny the tenant's ownership of, and right to, remove such machinery, because it had not been removed in a reasonable time.

4.  **Landlord and Tenant—Fixtures—Removal—Demand.**

     Where a tenant, after the expiration of the term, was entitled to remove certain machinery attached to the premises by him, the fact that his demand for the machinery embraced more property than he was entitled to remove, would not render such demand ineffective if the owner refused to turn over any part of the property.

5.  **Same—Evidence—Conversion.**

     In an action by a tenant against the landlord for the value

of machinery attached to the premises by the tenant, proof of demand by the tenant and refusal of the owner to permit the removal of the property, is necessary only for the purpose of showing a conversion, and if the fact of conversion otherwise appears, the demand and refusal become immaterial.

6. Same—Letter of Attorney.

In an action by a tenant against the grantee of the landlord for the value of certain machinery attached to the premises by the tenant, a letter written to plaintiff by defendant's attorney, introduced in evidence without objection from defendant, and in which defendant was asserted to be the owner of the property, and plaintiff's .claim to it was repudiated, was evidence of a conversion.

7. Parties—Joint Trespass—Dismissal—Several Liability.

In an action against joint trespassers for conversion of property, the liability of defendants is joint and several, and at any time before judgment the action may be dismissed as to one defendant and proceed against the other, or the court or jury in such action may find one defendant guilty and another not guilty.

8. Evidence—Conversion—Value—Assessment for Taxes.

In an action for the value of property alleged to have been converted, the record of the assessment of the property for taxes is not admissible in evidence, either to prove title or value of property.

9. Evidence—Conversion—Value—Purchase Price.

In an action for the value of property alleged to have been converted, where plaintiff testified that he knew nothing of the condition of the property at the time of conversion, the cost of the property to plaintiff was inadmissible to prove its value.

*Appeal from the District Court of Gilpin · County.

Mr. BRANCH H. GILES, for appellant.

Mr. GEO. S. REDD, for appellee.

THOMSON, P. J.

This suit was brought by John S. Risdon against F. D. Carper and E. C. Lindemann, to recover damages for the alleged conversion, by the defendants, of a shaft-house and certain mining machinery, belonging to the plaintiff. The complaint alleged

ownership and right to possession of the property in the plaintiff, fixing its value at $3,000; also a demand upon the defendants for the property, and their refusal to deliver it. The answer denied the ownership of the property by the plaintiff, and his right to the possession of it, denied its alleged value, and denied conversion; but averred that in so far as the property was in the possession of the defendants or either of them, it belonged to them or one of them. Before trial the plaintiff dismissed his claim as to the shaft-house. The cause was tried by the court, which, after hearing the evidence, ordered a dismissal as to the defendant Lindemann, and rendered judgment against the defendant, Carper, for $450. Carper appeals.

.The following were the facts disclosed by the evidence: On July 8, 1893, Daniel Procunier, the then owner of the Procunier lode mining claim, leased the claim to the plaintiff for three years. Nothing was contained in the contract of lease concerning the placing of machinery or improvements on the claim by the lessee, or their removal by him. He entered upon the property, and, having erected a shaft-house, purchased and placed upon the mining claim the machinery in controversy, for the purpose of working it. Before building the shaft-house, he had a conversation with Procunier with reference to the improvements he proposed, in which it was verbally agreed by Procunier that he should have the right to remove them upon thirty days' notice. On June 15, 1895, Procunier caused to be served on the plaintiff, a notice of forfeiture of the lease for failure of compliance with its terms. On the 20th of the same month, by agreement of the parties in writing, the forfeiture was waived, provided certain conditions of waiver were performed by the plaintiff. On December 17, of the same year, Procunier served

upon the plaintiff another notice of forfeiture, stating that the latter had failed to perform the conditions of the agreement of waiver, and notifying him to remove his machinery, or he (Procunier) would do so, and hold it subject to the plaintiff's disposition of it, and at his expense and risk. In the following month, the machinery still remaining on the claim, the plaintiff, at Procunier's request, consented that it might remain where it was for use by parties to whom Procunier proposed to lease the property. On August 11, 1896, Procunier conveyed the mining claim to Albert Rogers. On the 12th day of April, 1897, Rogers conveyed the claim to Geo. A. Lonsberry, who, on the same day, after executing to Rogers a trust deed of the property to secure the payment of $2,500, conveyed it to Carper. On the 15th day of September, 1898, Carper leased the claim to Lindemann, who, a few days afterwards, went into possession. The claim of the plaintiff to the machinery was understood by Rogers at the time of his purchase. Lonsberry seems to have been merely a conduit through which the title passed on its way from Rogers to Carper. He held it only long enough to execute the trust deed, and then turned it over to Carper. On the 10th day of December, 1897, a written agreement was entered into between the plaintiff and Carper, whereby the plaintiff leased the machinery to Carper at a rental of $25 per month, for four months, the rent to be paid only for the time the machinery was actually used, and gave him an option to purchase it for $1,500. Carper paid a portion of the rent, but did not exercise the option. About the 10th day of October, 1898, the plaintiff met Carper, and asked him if he (plaintiff) should remove the machinery; and Carper requested him not to do so. When demand was made upon Carper for the property, he refused to turn over any

part of it; and on November 8, 1898, the plaintiff received a letter, signed by Carper's attorney, notifying him that the machinery belonged to Carper, and informing him that whoever, whether the plaintiff or any one else, removed the machinery from the claim without authority from Carper, would be held responsible to Carper for its value.

The ground of Carper's claim to the ownership of the property is that the machinery became permanently affixed to the land, and was part of the freehold; so that his title to the land embraced the machinery. The rule invoked is, unquestionably, the general rule; but it does not obtain as between landlord and tenant. The plaintiff was lessee of the mine, and placed the machinery upon it for the purpose of operating it. Articles affixed by a tenant to the demised premises, for the purpose of carrying on the business for which they are leased, are removable by him, however firmly they may be attached.—*Ferry Co. v. Railway Co.,* 142 U. S. 396; *Updegraff v. Lesem,* 15 Colo. App. 297.

But the removal must be effected during the term of lease, if that remains in force for its full term; if, however, it is terminated by the act of the landlord before the time limited by itself for its expiration, the tenant has a reasonable time after it is so terminated within which to proceed.—Ewell on Fixtures, 141, 147; *Updegraff v. Lesem, supra.*

And what is a reasonable time is, in each case, determinable from the facts and circumstances peculiar to that case. The plaintiff's term of lease was not permitted to expire in accordance with the terms of the contract. An earlier period was put to it by the act of the landlord, Procunier, in declaring a forfeiture. The machinery was never removed by the plaintiff; and if Carper has acquired any right in it at all, it is not because the fixtures became part of

the realty at first, but because the plaintiff failed to take them away before his right to do so was barred.

But when we look into the reasons why the machinery was suffered to remain, we do not think any question of reasonable time arises in the case. It was left upon the premises at the request of the landlord. The plaintiff's right to take it away was never disputed, until the final demand was made. His title and right to remove were distinctly recognized at different times by the defendant, Carper; and the latter leased it from the plaintiff, and agreed to pay rent for it. He thus estopped himself to say that the plaintiff did not own the machinery, or to object that it had not been removed. And we find Carper, a considerable time after his lease of the machinery had terminated, requesting the plaintiff not to remove it. In view of all these facts, the defense which he makes, denying the plaintiff's title and asserting ownership in himself, is not only devoid of merit, but is tainted with bad faith.

It is contended that the plaintiff's demand for the property was ineffective because it embraced the shaft-house which he afterwards released, thereby disclaiming its ownership, and that Carper's refusal was not a refusal of property to which he was entitled, but a refusal of an aggregate of articles to a part of which he was not entitled. While the demand was for the whole, the refusal was more specific. It was, in terms, a refusal to turn over, not merely the whole, but any part of the whole; and while technically the demand may have been too general, the refusal was evidence of a conversion of the portion of the property to which the plaintiff now lays claim. But proof of demand and refusal is necessary only for the purpose of showing a conversion. If the fact of the conversion otherwise appears, the demand and refusal become immaterial.

—*Turner v. Hahn,* 1 Colo. 23; *Salida B. & L. Assn.
v. Davis,* 16 Colo. App. 294, 64 Pac. 1046.

The letter of Carper's attorney to the plaintiff—
which we must presume to have been written by Car-
per's authority, because it was not objected to—and
its admission is not assigned for error, in which
Carper was asserted to be the owner of the property,
and the plaintiff's claim to it repudiated, is in itself
evidence of a conversion.

The point is made that, after the court had
ordered the dismissal as to Lindemann, it could not
lawfully render judgment against Carper, because
the complaint charged a joint conversion. For a
joint trespass, the liability of the trespassers is joint
and several. This action might have been brought in
the first instance against Carper alone; or, having
been brought against both, there might, at any time
before judgment, have been a dismissal by the plain-
tiff as to Lindemann, leaving the action to proceed
against the other defendant; and, on principle, we
confess ourselves unable to see why the court might
not do what could have been done by the plaintiff, or
why it is not competent to either court or jury, in an
action for a trespass, to find one defendant guilty
and another not guilty. In *Dahms v. Sears,* 13 Ore.
47, 64, Thayer, J., speaking for the court, said: "I
think a jury has a right, in cases of tort, where there
are several defendants, to find a verdict against a
part of them and in favor of the others. The older
authorities sustain that view, and the law has not
been changed by the code practice as I have been
able to discover." We do not think the objection to
the judgment well taken.

But the court, over Carper's objection, admitted
in evidence the records of the office of the county
treasurer of Gilpin county. These records showed
that from 1895 to 1898, inclusive, the property was

assessed to the plaintiff, and, for the purposes of the assessment, was valued at $700. What the object in introducing them was, or why they were admitted, does not appear. They were competent evidence of what they contained, and could be used in any case where matter in relation to taxation was in issue. But there was no issue in this case to which they were relevant. They were not evidence of title, and they were not evidence of value. Title was abundantly proved outside of them; but, for aught we know, the court may have used them in making its estimate of the value of the property. Their admission was error.

The plaintiff testified that the value of the property at the time of its conversion was $1,000. He said that was what the property cost him in 1894, and he based his estimate of its value solely on what he paid for it. But he said that of its condition in 1898, when Carper converted it, he knew nothing. The question was, what was its value at that time, and not what was its value originally, or what did it cost him; and, concerning its value when converted, he showed himself utterly unqualified to speak. Two witnesses who were thoroughly familiar with the condition of the property at that time, and were competent on the question of value, testified, one, that it was worth $225, and the other that it was worth $185, or $200. The court fixed its value at $450, and, to settle upon that figure, it must have considered evidence outside of the testimony of the only witnesses who knew whereof they testified; and that evidence must have been either the testimony of the plaintiff, or the records of the treasurer's office, or both. The introduction of the plaintiff's testimony was resisted in the proper manner by the defendant, and should have been excluded.

The foregoing errors necessitate a reversal of the judgment. _____ *Reversed.*