## GROTE v. BROWN et al.
### No. 3614.

United States Court of Appeals
Tenth Circuit.
Nov. 15, 1948.

Albert B. Logan, of Colorado Springs, Colo., for appellant.

J. R. Strickland, of Denver, Colo. (Strickland, Strickland & Tull, of Denver, Colo., on the brief), for appellees Evans and Martin.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, as administrator to collect the estate of William F. Earle, brought this action in the State District Court of Colorado to replevin certain trade fixtures located in a building at Florence, Colorado. The cause was removed to the Federal Court on agreed diversity of citizenship and requisite amount in controversy.

The fixtures consisted of mining machinery and equipment used and useful in the exfoliation of vermiculite ore, and were installed in the plant by Brown Mineral Research, a partnership, during the term of its lease on the premises. The question is whether appellant, as successor in title to the lessees, may remove the trade fixtures from the premises after the expiration of the lease during which they were installed. The trial court was of the opinion that "even if the law of Colorado permits a tenant to remove trade fixtures within a reasonable time after the expiration of a lease, the tenant in this instance failed to act within that reasonable time." It concluded, therefore, that the title to the fixtures vested in the owner of the building and denied replevin.

Although somewhat involved, the facts are not materially in dispute. The Brown Mineral Research was a partnership, composed of Frank E. Brown, H. W. Eckert, general partners, and William F. Earle and W. T. Middleton, limited partners. On March 10, 1944, the partnership acquired a lease on a building in Florence, Colorado, for use as a vermiculite processing plant. The lease was for one year beginning March 10, 1944, with an option to purchase for $5,000.00. During the term of the lease, the partnership installed the machinery and equipment involved here. Before the termination of the lease, however, and on December 14, 1944, Earle, who had furnished most of the money for the partnership, brought suit against his partners for dissolution of the partnership, and for an accounting of its assets. On March 3, 1945, one week before the expiration of the partnership lease, Brown, being unable to raise the necessary rental money for a renewal of the lease, approached Milford B. Martin, who, together with Brown, arranged with the owner for a lease to Martin for one year beginning with the expiration of the partnership lease on March 10, 1945. Upon the payment of $1,200.00 advance rental, Martin took the lease in his own name, and at his request, Brown signed a statement individually and as attorney in fact for Eckert (who was overseas), to the effect that because of their financial inability to pay the rent, they "both abandon and surrender all our right, title, interest and equity in and to the lease of March 10, 1944." Also at Martin's request, Brown wrote the word "acceptable" on the receipt for the rent, which recited that "this lease is being given up by the previous lessors."

Thereafter Brown had access to the building as living quarters and for the purpose of storing mineral samples, but he ceased using it in December 1945, after having been denied access by Martin. The machinery in question was not being used when Martin obtained his lease, nor has it since been used by anyone else.

To settle the controversy within the partnership, on November 26, 1945, and after the lease of the premises to Martin, Brown and Eckert conveyed all of their

right, title and interest in the limited partnership to Earle, who agreed to release the equipment to Brown and Eckert for an agreed rental or sale price. In apparent recognition of Martin's lease on the premises, the settlement agreement recited that Brown and Eckert would negotiate with the Florence Machinery and Supply Company, "or with the lessees, or option holders * * * who have any rights or interest in and to the buildings heretofore used by the said limited partnership for the operation of the said partnership business, and in which said buildings the machinery and equipment of the said partnership is now located, for the lease or purchase of said buildings."

Earle died in January 1946, and the appellant here was appointed Administrator to collect on May 8, 1946, and this action was commenced September 3, 1946. Meanwhile, through negotiations with Martin, appellee Evans exercised the option to purchase the plant under the Martin lease, and acquired title thereto on April 9, 1946. At no time was demand made upon either Martin or Evans for the return of the fixtures installed in the plant until the filing of this suit. When Evans acquired title to the property, he knew the circumstances under which the fixtures were installed and that the title was questionable. He also knew, however, that no demand had been made on Martin or himself for possession of the equipment by the partnership Brown, Eckert or Earle.

On these facts, the court found that since the partnership was dissolved by the voluntary acts of the partners on November 26, 1945, its possession of the premises, on which it admittedly had no lease, was surrendered as of that date at the latest.

■ Considerations of public policy prompt the rule which permits a tenant to remove fixtures installed on leased premises during the lease and used in connection with his business there. Updegraff v. Lesem, 15 Colo.App. 297, 62 P. 342; Carper v. Risdon, 19 Colo.App. 530, 76 P. 744; Foote v. Carroll, 64 Colo. 182, 170 P. 954; Seaton-Hayden Mines Co. v. Renshaw, 101 Colo. 342, 73 P.2d 999; Andrews v. Williams, 115 Colo. 478, 173 P.2d 882, 169 A.L.R. 471; Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055; Willcox Boiler Co. v. Messier, 211 Minn. 304, 1 N.W.2d 130; 22 American Jurisprudence, Fixtures, Sec. 61, p. 775. Generally, the fixtures may be removed within the term of the lease, else they become a part of the premises to which they are attached. See Updegraff v. Lesem, supra; Carper v. Risdon, supra. If, however, the lease is terminated by the landlord before expiration, see Carper v. Risdon, supra, or under circumstances beyond the control of the lessee, he has a reasonable time in which to remove the fixtures after the termination of the lease. The reasonable time is determined in each case by the peculiar facts and circumstances, and is largely within the discretion of the trial court. See Updegraff v. Lesem, supra; Carper v. Risdon, supra; Foote v. Carroll, supra.

■ Here the partnership lease expired by its terms on March 10, 1945. Martin released the premises in his own name, with full knowledge and consent of Brown, who testified that Martin agreed when he acquired the lease to hold it for the benefit of the partnership, or in any event for Brown's benefit. But Martin denied any such comment, and the trial court credited his testimony. Moreover, when Martin took the lease, Brown acknowledged in writing that he had no further right or interest in the leased premises. When, in November 1945, nine months after the lease to Martin, the members of the partnership came to settle their controversy, they again acknowledged Martin's lease, and agreed in effect that they would negotiate with him to "lease or purchase" the premises.

It is plain, therefore, that the parties never claimed any interest in the Martin lease, and never asserted any right to the fixtures in question until more than eighteen months after the expiration of their lease by its own terms. In these circumstances, we agree with the trial court that the tenant did not exercise his rights to remove the fixtures within a reasonable time. The judgment is therefore affirmed.