## WILLIAM McCANDLESS *v.* LEE CHEW.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 13, 1905.　　　　DECIDED MARCH 17, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

INJUNCTION—*waste—buildings not removable by tenant under covenant to deliver up.*

> Defendant's lease contained a covenant against waste and that at the end of the term he would "peaceably deliver up said premises to said lessor or his heirs or assigns with all future erections or additions upon or to the same." Defendant had erected certain rough wooden buildings on the leased premises, one for a horse stable, another for lodging employes in the upper floor, and keeping hacks below; also two small sheds, one for washing hacks and wagons and the other for painting them, defendant being in the business of selling vegetables and keeping a hack-stand. Held: The buildings were within the intent of the covenant, but their removal causing no appreciable injury to the freehold, and the defendant not being shown to be unable to respond in damages, an injunction is properly refused. The damage from loss of the buildings is computable and is not waste which equity enjoins.

OPINION OF THE COURT BY HARTWELL, J.

We adopt the following statement of the case made by the trial judge in his decision:

"This is a bill to enjoin and restrain the defendant from tearing down and removing certain wooden structures or buildings, erected by the defendant upon certain premises owned by plaintiff and occupied by defendant as tenant of plaintiff.

"It appears from the evidence that on the 26th day of April, 1899, plaintiff, by written lease, signed by plaintiff and defendant, leased to said defendant certain premises, then owned by him and of which he is still the owner, situate at Palama, Oahu, more particularly described in plaintiff's bill, for the term of five years from the 1st day of January, 1900, for a rental of $300 per annum, to be paid in equal quarterly payments in advance, the first of such payments to be made January 1, 1900, which lease is still in force.

"Among the covenants contained in said lease are the following, viz.:  *  *  *  'That he, said lessee,  *  *  *  will not commit or suffer any waste of said premises; and also, at the end of said term will peaceably deliver up said premises to said lessor, or his heirs or assigns, with all future erections or additions upon or to the same.'

"Under and pursuant to said lease the defendant entered into possession of said premises and proceeded to erect and did erect thereon two wooden buildings or structures. On the 15th day of January, 1904, while occupying said premises as tenant of plaintiff, defendant proceeded to and did tear down and destroy a large portion of one of said buildings, and threatens to tear down and remove both of said buildings, unless restrained by the order of this court.

"It also appears from the evidence that the defendant was at all of the times mentioned and is now engaged in the business of raising vegetables on a portion of the demised premises and employed and used horses and wagons in hauling and conveying such vegetables to market, and that he was also engaged in maintaining, conducting and carrying on a hack-stand in the city of Honolulu, and owned horses and hacks or carriages to be used and which were used in and about the business of said hack-stand. That one of the buildings so erected by him upon the premises aforesaid consisted of a ridged or peaked roofed building, composed of rough lumber, fixed and resting upon posts set into the ground a distance of two and a half or more feet, and was partitioned or divided into stalls, for the accommodation of horses, in which the defendant kept his horses, both used in drawing his vegetable wagons as well

as those used in drawing his hacks or carriages. The other buildings consisted of a two-story ridged structure, composed of rough lumber, the upper portion being divided into about ten rooms and the lower portion constituting a single large room. The last mentioned structure covered a superficial area of about twenty-four feet by forty-eight feet, and rested upon timbers supported by coral stones, from fourteen to sixteen inches by from fourteen or eighteen inches in size. Owing to the fact that the ground upon which the building was erected sloped from mauka to makai, the ground immediately beneath the mauka end of the building was excavated to a depth of several inches and the coral stones upon which that end of the building rested were embedded into the soil a considerable distance, and the timbers resting upon the same and upon which the superstructure was erected were placed about six or seven inches below the surface of the soil immediately adjacent. The makai end of the building rested upon coral stones placed upon the surface of the ground, but which had become slightly depressed into the soil by the weight of the building. The lower portion of the main building, consisting of a single large room, was intended for use and was used by the defendant as a carriage repository or place in which to keep his hacks or carriages and vegetable wagons during the night time or whenever the same were not in use. With regard to the use of the upper portion, the defendant testified that the rooms therein contained were used by him for lodging the men employed by him, that he charged the men two dollars per month per room, but that he did not often collect the amount charged and that he himself lodged there for about two years.

"Attached to the main building are two sheds or lean-tos, consisting of rough lumber, the main building to which they were attached with spikes, constituting one side and the side furthest from the main building resting upon posts sunk into the ground a distance of two and a half feet or more. One of these sheds or lean-tos was used by the defendant as a washhouse for carriages and wagons and had an excavation under it varying from eighteen inches to two feet in depth, constituting a drain, for the purpose of carrying away the waste water due to washing the carriages and wagons. The other shed or lean-to was used by the defendant as a paint shop in painting his carriages and wagons.   *   *   *

"The evidence in the case at bar fails to show whether or not

the buildings erected by the defendant could be severed from the realty without being destroyed, or reduced to a mere mass of crude materials, but I assume that the method adopted by the defendant,—the tearing down of the buildings, from the pursuit of which method he was restrained by the temporary injunction issued herein,—is the most feasible, if not the only means by which the removal of the buildings could be accomplished, and I assume, also, in view of the fact that a considerable excavation was made in the land immediately under the mauka end of the main building, and that holes were dug to receive the posts supporting the stable as well as the sheds or lean-tos attached to the main building, and also, in constructing the drain underneath the wash-house, that the removal of the buildings would result in some damage to the land itself.

"The plaintiff insists that the buildings erected by the defendant are permanent fixtures, but even if the court should find that said buildings were erected and constructed and used by the defendant for the uses and purposes of his trade or occupation, still he contends that the covenant contained in the lease on the part of the lessee to quit the premises upon determination of the lease 'with all future erection or additions upon or to the same,' is a controlling factor in determining the intent of the parties in reference to the removal character of the buildings, and that the relief prayed for in his bill should be granted because of such covenant.

"The defendant, on the other hand, claims the right to remove the buildings referred to, irrespective of the covenant contained in the lease, on the ground that the same are trade fixtures, being intended for use and used solely by him in his business of raising vegetables and in conducting a hack-stand, and therefore, removable by him at any time before the expiration of the lease."

The judge held that the buildings were trade fixtures and as such removable by the tenant, notwithstanding the covenant, which he thought was not intended "to deprive the tenant of the right to remove trade fixtures," regarding the case as within the rule in *Holbrook v. Chamberlain,* 116 Mass. 155. We have no doubt that in the absence of the covenant the buildings would be removable by the tenant within the term of his lease. The

following cases illustrate this doctrine: *West. N. C. Ry. Co. v. Deal,* 90 N. C. 112, a railway depot; *Russell v. Richards,* 10 Me. 431, a mill; *Van Ness v. Pacard,* 2 Pet. 137, a two-story building used for both residence and business of a dairyman. But we cannot say that the buildings were not "erections or additions upon or to the same," namely, upon the leased premises, for that is precisely what they were. In the Holbrook case, ante, a lessee had removed from a building on the leased premises certain shafting, pulleys and belts with a portable boiler and connecting steam pipes which the court held were either removable trade fixtures or personal chattels, and not within the intent of the covenant, which the court regarded as "limited to new buildings erected or old buildings added to the premises."

But because of the covenant to deliver up the buildings it does not follow that their removal constituted waste of the kind which equity will prevent. The extent of the damage to the freehold is capable of definite computation. The bill avers that the damage by the defendant's removal of a large portion of one of the buildings is "the sum of $500" and that the value of the two buildings was "$1,000 and upwards." It is evident that the only appreciable injury which the plaintiff would receive would be in the loss of the value of the buildings and not in any injury to the land which their removal would cause. The defendant is not shown to be unable to respond in damages in an action at law. In his answer he avers that he is responsible and solvent and claims that the "plaintiff has full and adequate remedy at law."

"An injunction is not granted to stay waste unless it appear that the injury would be irreparable, either because of the impossibility of estimating the damages at law, because of the insolvency of the defendant, or that a resort to law would result in interminable litigation." 1 Spelling on Extr. Rel., Sec. 243. "It is not to be understood that injunction will be granted in all cases of waste, regardless of the fact that a proceeding at law may be instituted for the same cause. Where an

adequate remedy may be found, equitable relief will be refused here as in other cases." Ib., Sec. 250.

"Where the injury complained of is susceptible of perfect pecuniary compensation, and one for which satisfaction in damages can be had at law, the injunction will be withheld." 1 High on Inj., Sec. 651.

In the following cases equity jurisdiction was declined on the ground that there was adequate legal remedy: *Nott v. Burgess,* 5 Haw. 420; *Haw. Com. & Sugar Co. v. Kahului R. R. Co.,* 11 Ib. 440; *Wundenberg v. Mossman,* 14 Ib. 167.

We sustain the decree appealed from, not on the ground that the defendant's covenant did not refer to the buildings, but on the ground that equity has no jurisdiction under the circumstances of this case. Decree accordingly.

*J. A. Magoon, J. Lightfoot* for plaintiff.

*R. W. Breckons* and *H. Hogan* for defendant.