## In re WAIPUNA TRADING COMPANY, INC., Debtor.

### Bankruptcy No. 83–00299.

United States Bankruptcy Court, D. Hawaii.

Aug. 30, 1984.

Gerald I. Fujita, Honolulu, Hawaii, for trustee.

Elbridge W. Smith, Honolulu, Hawaii, for movant.

Preston A. Gima, Honolulu, Hawaii, for creditor Rays.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JON J. CHINEN, Bankruptcy Judge.

This cause came on for hearing before this Court on January 11, 1984, January 25, 1984, April 25, 1984, and June 12, 1984, before the undersigned Judge, pursuant to Creditor/Movant Honolulu Transport & Warehouse Corporation's (hereinafter referred to as "Movant") Motion to Set Aside Sale of Trustee filed herein on December 30, 1983. Movant was represented by Elbridge W. Smith and Creditor Ray's Express, Ltd., (hereinafter referred to as "Ray's") was represented by Preston A. Gima. The Court having heard and considered the evidence presented and being fully advised in the premises, makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Movant during all times pertinent, was, and now is, a corporation duly organized and existing under and by virtue of the laws of the State of Hawaii.

2. Ray's, during all times pertinent, was, and now is, a corporation duly organized and existing under and by virtue of the laws of the State of Hawaii.

3. Debtor Waipuna Trading Company, Inc. (herein "Debtor") was a corporation duly organized and existing under and by virtue of the laws of the State of Hawaii.

4. As of 1974, Ray's was the lessee of a certain parcel of land fronting on Kahai Street, near Mokauea Street, in Kalihi, Honolulu, Hawaii ("the premises").

5. Sometime in 1974, Ray's subleased to Debtor the premises, which then contained a structure with only a roof, ridge and steel beams in place. Debtor added the sidewalls and lighting fixtures to the structure,

together with chill boxes, and converted the structure into a food cold storage facility.

6. On or about September 7, 1982, Movant acquired the master leasehold interest of a certain warehouse property located on Mokauea Street, including the premises. The master lease was subject to the sublease in favor of Ray's and a sub-sublease in favor of Debtor.

7. On or about June 14, 1983, Debtor filed a Voluntary Petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code listing thereon Movant as its landlord. However, Movant was not a creditor of Debtor.

8. By its terms, the sublease for the premises held by Ray's expired on July 31, 1983 and Ray's admitted to being in default with respect to rent payments prior to July 31, 1983. Debtor had been and was in default with respect to payment of rent for premises prior to July 31, 1983.

9. The Trustee herein rejected/abandoned the sub-sublease held by Debtor.

10. Thereafter, pursuant to Court authorization, the Trustee advertised a sale by public auction of all of Debtor's office furniture, fixtures and equipment, trucks, forklifts, chill boxes and other tangible personal property. In addition, notice was sent to all creditors of Debtor. However, no notice was sent to Movant, who was not listed as a creditor of Debtor.

11. On August 14, 1984, the Trustee held the public auction on the premises as advertised. Movant's president happened by the premises, noticed the activity and told a person who was attaching notices on behalf of the Trustee that the chill boxes belonged to him and were 'not for sale. But Movant's president did not personally speak to the Trustee.

12. At the auction, Ray's was the high bidder for certain chill boxes, designated as Lots 64 and 82. These chill boxes were installed by Debtor when it moved onto the premises.

13. The chill boxes are not connected to the walls of the buildings on the premises.

They are bolted onto concrete flooring, which goes into the ground, but the extent thereof is unknown.

14. At the time Debtor placed on the premises the freezer and/or chill boxes in question, Debtor fully intended that said items would be removable from the premises and that Debtor would do so at the end of the term of the lease or if Debtor vacated the premises; that at all times Debtor believed and intended that the freezer and/or chill boxes in question belonged to Debtor. Otherwise, Debtor would not have installed the chill boxes on the premises, for they were expensive.

15. The set of smaller chill boxes located within the larger warehouse cost approximately $75,000.00 to purchase and install in 1975. The other separate, larger chill box building was acquired as a contribution to the business by a partner and its value at that time is unknown but the cost of installation was approximately $10,000.00—$20,000.00.

16. Ray's at the beginning of the lease with Debtor and throughout the relevant term of the lease believed and agreed with Debtor that the freezer and/or chill boxes in question belonged to Debtor and were removable by Debtor at any time.

17. It is usual and customary in the trade to consider these chill boxes to be portable, removal and trade fixtures.

18. In the instant case, it has been estimated that it would cost from a low of $6000.00 to a high of $40,000.00 to restore the premises after the removal of the chill boxes, along with the concrete footing.

## CONCLUSIONS OF LAW

1. 11 U.S.C. § 363(b) and the Rules of the U.S. Bankruptcy Court provide that notice of a proposed sale of property must be given to the Debtor, the Trustee and all creditors.

2. 11 U.S.C. § 101(9)(A) defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

3. 11 U.S.C. § 101(4) defines a claim as either a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."

4. At the time of or before the order for relief concerning the debtor herein, Movant had no "claim" against Debtor herein and was, therefore, not a creditor of Debtor and not entitled to notice of the public auction in question.

5. The public notice which had been published by the Trustee in a newspaper of general circulation was adequate notice to Movant. Further, the attendance of Movant's President at the public auction in question constitutes actual notice thereof and a waiver of any objection to notice thereof. *Pace v. Berry*, 176 Ky. 61, 195 S.W. 131 (1917).

6. Generally, the moving party or party objecting to a sale at public auction has the burden of proof. *See In re Rapier Sugar Feed Co.*, 13 F.Supp. 85 (W.D.Ky. 1935).

7. It is presumed that the tenant does not intend to enrich the freehold, but makes additions and/or improvements for his own benefit. *Andrews v. Williams*, 115 Colo. 478, 173 P.2d 882 (1946); *McCandless v. Chew*, 16 Haw. 530 (1905); 22 Am.Jur. 749, § 40.

8. The elements in determining whether an item is a fixture are (1) degree of annexation to realty or something appurtenant thereto; (2) adaptability or application as affixed to the use for which the real estate is appropriated; and (3) intention to make the chattel a permanent accession to the freehold. *Price v. Sunmaster*, 27 Ariz. App. 771, 558 P.2d 966 (Ct.App.1976).

9. The question of intent is the chief test and the intent of the parties must affirmatively and plainly appear. *Boone v. Smith*, 79 N.M. 614, 447 P.2d 23 (1968).

10. The chill boxes in question were not firmly annexed to the premises or realty herein involved. They were not at-tached to the walls and load bearing structure of the building and were merely bolted down.

11. The chill boxes were not affixed as to create a clear adaption to the use of the premises in question, in that the use of the premises was clearly for general warehouse space and the removal of the freezer and/or chill boxes would not change the character or general use of the premises.

12. It is clear that Debtor and its sublessor, Ray's, intended that the chill boxes belonged at all times to the Debtor herein and that they were removable by the Debtor at the end of the term of the lease.

13. It is generally recognized in the refrigeration trade that chill boxes of this nature are "trade fixtures" and removable by the tenant or chattel owner.

14. Trade fixtures can be removed by the tenant who has installed them (as if they were his personally) as long as such does not result in material and permanent injury to the freehold. *See, In re Marla Jean, Inc.*, 25 B.R. 282 (Bkrtcy.Mo.1982); *Jim Walter Window v. Turnpike Distribution*, 642 S.W.2d 3 (C.A.Tex.1982); *Kenneally v. Standard Electronics Corp.*, 364 F.2d 642 (8th Cir.1966); *Andrews v. Williams*, 115 Colo. 478, 173 P.2d 882 (1946); *McCandless v. Chew*, 16 Haw. 530 (1905).

15. The cost of restoring the premises after removal of the chill boxes and their concrete foundation may vary from $6000.00 to $40,000.00. Because neither Ray's nor Debtor had shown the financial ability to restore the premises, to make certain that the premises will be properly restored, either Debtor or Ray's must post a $40,000 bond satisfactory to Movant and/or to the Court before the chill boxes are removed.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. That Movant's Motion to Set Aside Sale of Trustee and Objecting to the Report of Auction filed September 9, 1983,

filed herein on January 3, 1984, is hereby denied.

2. That the freezer and/or chill boxes in question properly belong to Ray's, the purchaser at auction, and that Ray's may remove said freezer and/or chill boxes, provided that a $40,000 bond satisfactory to Movant and/or to the Court is posted before removal of the chill boxes.

If the bond is not posted within 45 days from the date of this Order, the chill boxes are deemed abandoned by both Ray's and Debtor and title shall thereby be vested in Movant.