ЈAMES M. KIMBALL & others *vs.* THE MASTERS, WARDENS AND MEMBERS OF THE GRAND LODGE OF MASONS IN MASSACHUSETTS.

Suffolk. Jan. 12, 13. — April 5, 1881. COLT & FIELD, JJ., absent.

At the time the lease of a shop was executed, there were in the shop two large cases, each ten feet high and between thirty and forty feet long, having shelves and drawers, and mirrors inserted, with a cornice on top and a moulding at the bottom, which had been put into the room by a former tenant of the shop. These cases occupied spaces for which they had been made, rested on the floor of the room, and were fastened to the wall by nails driven through the backs of the cases into the plastering. The base-board round the room did not extend behind the cases, and the wall behind them was not painted. After they were put in, the woodwork of the room, the cases and the walls of the room, except behind the cases, were painted, to correspond with each other. Before the exe cution of the lease, the cases had been sold by the former tenant, and the purchaser, subsequently to such execution, removed them against the lessee's objection. In consequence of the removal of the cases, the plaintiff had to expend the sum of $200 to paint the walls behind the places where the cases had stood, and the rental value of the shop was lessened. The lessee did not know of the sale when he took his lease, and nothing was then said about the cases. *Held*, in an action by the lessee against the lessor for breach of the covenant for quiet enjoyment in the lease, that the cases did not constitute part of the realty; and that, even if the cases were removed with the consent of the lessor, the act of removal was a trespass, and not an eviction; and that the action could not be maintained.

CONTRACT for breach of the covenant for quiet enjoyment, in a lease of certain rooms in the Masonic Temple in Boston, executed by the defendant corporation to the plaintiff on April 10, 1869. Trial in the Superior Court before *Aldrich*, J., who reported the case for the determination of this court, in substance as follows:

In one of the rooms demised were two cases of drawers with shelving, cupboards and mirrors, constructed and fastened to the room as follows: The cases were constructed at a carpenter's shop for and at the expense of Copeland and Tarbell, then lessees of the room in which the cases were placed, and were brought to the room in sections, in a finished state, except that they were not painted. The base, to the height of about three feet, was occupied with drawers, and on these stood cases with shelves, with doors in front, some seven or seven and one half feet high, with a cornice at the top and a moulding at the

bottom, resting on the floor of the room when the cases were in place. In one of the cases there were two recesses in the shelves, extending to the top and nearly to the back; and in each of these recesses was a mirror, three or four feet wide and seven feet high, with a heavy moulding at the top. In the other case there was one recess, occupied by a mirror of the same dimensions as the first two named. The mirrors formed a component part of the cases, and had no other connection with the premises leased, except as they were connected with the cases. One of the cases was thirty-nine feet long, the other thirty, and each ten feet high. Before these cases were put into the room, the floor of the room, consisting of marble tiles, had been laid, and the room had been plastered, but was not painted or frescoed. The cases, when placed in the room, occupied spaces for which they had been made, and rested on the marble tile floor, and were fastened and held in position by nails two or three inches long, driven through the wooden backs of the cases into the plastering behind them, and some into the woodwork of the room around and behind the cases. The base-board around the room did not extend behind the cases, but came up to the moulding around the base of the cases.

After the cases were in place, the ceiling of the room, and the walls down to the top of the cases, were frescoed, and the woodwork of the room and the cases was painted. The color of the cases corresponded with that of the doors and windows. When the cases were subsequently removed, as hereinafter stated, that portion of the walls which had been covered by them was left without paint, and the plastering and woodwork, into which the nails, as before stated, had been driven to hold the cases in place, were left somewhat broken and injured, and the plaintiffs were subjected to an expense of about $200 to repair and finish that part of the room, including painting and frescoing, to make it correspond with the rest of it.

At the time the demised premises were examined by the plaintiffs, prior to their lease, and when they entered and took possession under their lease, said cases were in the room, as above described. There was nothing said between the parties to the lease as to whether these cases were or were not a part of the leased premises.

The cases were procured and put into the room at their own expense by Copeland and Tarbell, former tenants of the defendant corporation, and they fitted up the room and occupied it as a confectionery shop, in connection with a restaurant, under a lease from the defendant. Copeland and Tarbell failed, and their assets were conveyed to John C. Gilbert and Israel Nash, as trustees, who sold the same by auction, including said cases, in the month of December 1868. The cases were bid off at the auction by Williams and Everett. On January 4, 1869, the board of directors of the defendant, having charge of said premises and all matters connected therewith, passed a vote that all fixtures in the rooms recently occupied by Copeland belong to the Grand Lodge, and that the president of the board of directors be directed to see that none of said fixtures be removed. And, on January 15, the same board voted that the president of the board of directors be authorized to settle with Charles Copeland and others claiming title to the fixtures in the said rooms. In accordance with this vote, the president executed an agreement with Copeland and Gilbert and Nash, by the terms of which the persons last named were to remove the cases. Copeland and Tarbell thereupon gave up, and the defendant resumed possession of, the leased premises.

The plaintiffs were not informed of the sale nor of the agreement, and were ignorant of the same until after they had executed their lease with the defendant, and had entered and taken possession of the demised premises, after which Williams and Everett demanded the cases of the plaintiffs, and removed them, claiming them as purchasers at the sale by auction. The plaintiffs, who had sublet the room in which the cases were, remitted to their lessees in satisfaction of a claim for damages in consequence of the removal of the cases, the sum of $300 of the rent falling due from said lessees to the plaintiffs, and expended the further sum of $200 for the purposes aforesaid. The difference in rental value of the room, with and without said cases, was at the rate of ten per cent per annum on their value, which was about $700.

The defendant contended that the cases were mere furniture, and that, if they were fixtures, their removal by Williams and Everett was a trespass, for which the defendant was not liable,

it not being shown that the defendant authorized Williams and Everett to make the removal.

Upon the foregoing facts and evidence, the judge ruled the action could not be maintained, and ordered a verdict for the defendant. If the ruling and order were correct, judgment was to be entered on the verdict; otherwise, the verdict to be set aside and a new trial granted.

*A. A. Ranney & W. S. Slocum*, for the plaintiffs.

*R. D. Smith & F. L. Hayes*, for the defendant.

ENDICOTT, J. The material facts, upon which this case arises, are as follows: The defendant leased certain rooms in its building to Copeland and Tarbell, who placed therein two show-cases, the character of which it is important to notice. The base of the cases, to the height of three feet, was occupied by drawers; above were rows of shelves, with doors in front, about seven feet high, and mirrors four feet wide and seven feet high, placed in recesses and forming part of the cases. One case had one mirror and the other two. A cornice extended along the entire top, and there was a heavy moulding at the bottom of the cases. They stood upon the marble floor, and formed no part of the permanent finish of the room; but were fastened to the wall by nails. The room was large, and one of the cases was thirty feet and the other thirty-nine feet in length.

Copeland and Tarbell failed, and their assets were conveyed to trustees, who sold the same, including these cases, by auction, in December 1868. The cases were bid off by Williams and Everett. Some question seems to have arisen between the defendant and the trustees, in regard to the removal of fixtures, and an agreement was drawn up, wherein it appears that the defendant made no ⁻claim to these cases. The premises were thereupon surrendered. The defendant then executed a lease to the plaintiffs of the premises including the room in which these cases were at the time. The plaintiffs had no notice of the agreement, and nothing was said between the parties upon the question whether the cases were a part of the demised premises. Williams and Everett demanded them of the plaintiffs, and, upon refusal to deliver them, entered, without the plaintiffs' consent, and removed them. The plaintiffs thereupon brought this action

We are of opinion that the presiding judge properly ruled that the action could not be maintained. It is evident from the description of these cases and from the manner in which they were placed in the room, taken in connection with the obvious purpose for which they were to be used, that they formed no part of the realty, but were mere chattels or articles of furniture belonging to the tenant. *Guthrie* v. *Jones*, 108 Mass. 191. *Towne* v. *Fiske*, 127 Mass. 125. *Park* v. *Baker*, 7 Allen, 78. *Wall* v. *Hinds*, 4 Gray, 256. *McConnell* v. *Blood*, 123 Mass. 47. Their character as furniture is not changed by the fact that by reason of their size it was not necessary to paint and finish the wall behind them, which they concealed. Their removal therefore could not constitute an eviction of the plaintiffs from any portion of the demised premises as alleged in the declaration. Williams and Everett were mere wrongdoers, to whom the plaintiffs were not bound to yield, and against whom they could have maintained an action of trespass *quare clausum fregit*. They did not act under the authority of the defendant, and the act done by them was not of a permanent character, the effect of which was to deprive the tenant of the enjoyment of the demised premises or any part of them. Even if the defendant had removed these chattels, it would not have been a breach of the covenant for quiet enjoyment, but a mere act of trespass. *Bartlett* v. *Farrington*, 120 Mass. 284. Under a covenant for quiet enjoyment, the lessor does not covenant against the acts of wrongdoers; and, to constitute a breach of this covenant, the person who does the act must have some lawful interest or right in the realty whereby the tenant is evicted, and not merely a title to some chattel that happens to be upon it. "A general covenant in a lease for quiet enjoyment extends only to entries and interruptions by those who have lawful title, but not by wrongdoers; for the tenant has his remedy by action for all tortious entries and disturbances." *Ellis* v. *Welch*, 6 Mass. 246, 252. *Sherman* v. *Williams*, 113 Mass. 481. *Gardner* v. *Keteltas*, 3 Hill, 330. *Howell* v. *Richards*, 11 East, 633, 642. *Dudley* v. *Folliott*, 3 T. R. 584. *Nash* v. *Palmer*, 5 M. & S. 374.

*Judgment on the verdict.*