[No. 1851.]

ROYCE v. LATSHAW.

1. LANDLORD AND TENANT—TRADE FIXTURES—MORTGAGES.

A greenhouse composed of two by four pieces set a few inches in the ground with boards nailed on the sides and a glass roof, and heating apparatus consisting of two Hotchkiss hot water furnaces, all of which could be removed without injury to the real estate and which were placed on rented premises by the lessee for the purpose of carrying on a floral business, and with the intention of being removed at the expiration of the lease, were trade fixtures and subject to removal by the tenant as against a purchaser of the real estate under a foreclosure of a mortgage executed by the lessor, notwithstanding the mortgagee at the time of taking the mortgage had no notice that the greenhouse and heating apparatus were claimed by a tenant as trade fixtures, or that any one except the mortgagor claimed any interest therein.

2. MORTGAGES—IMPROVEMENTS—TRADE FIXTURES.

Where a mortgage conveys real estate " together with all improvements

thereon" the word "improvements" will be construed to apply only to such buildings and structures as are attached to the realty in such manner as to become part of it and not to trade fixtures placed thereon by a tenant.

3. PRACTICE—INSTRUCTIONS—EQUITY PROCEEDINGS.

In an equity proceeding where a jury is called for advisory purposes, the court may submit to the jury such questions and give such instructions as it chooses, and the refusal to give any instruction, or to submit any question asked by a party, is not error.

*Appeal from the District Court of Pueblo County.*

Mr. M. J. GALLIGAN, for appellant.

Mr. S. HARRISON WHITE, for appellee.

WILSON, J.

This action was instituted to recover the possession of two lots in the city of Pueblo, together with the improvements thereon. Plaintiff claimed title through a deed of trust, a trustee's deed and a warranty deed from the purchaser at the foreclosure sale. The answer denied the right of plaintiff to the possession, and specially alleged that the defendant was the owner of the greenhouse and the heating apparatus therefor, situate upon these lots. At the trial, the right of plaintiff to the possession of the lots and all improvements thereon, except the greenhouse and its appurtenances, was conceded, and the title to the latter, therefore, is the only question in controversy. Pending this suit, and prior to trial, the defendant attempted to remove the greenhouse and heating apparatus, and the plaintiff secured a temporary injunction restraining her from so doing. The motion to dissolve the injunction was denied, the court stating that this would be considered and determined as a part of the main suit. When the case was reached for trial, nothing remained to be determined but the question in regard to the ownership of the greenhouse, and the hearing was had in the injunction proceedings which would determine this question. The suit,

therefore, became one in equity. The material facts necessary to be stated, so far as we can glean them from the two printed abstracts presented by the respective parties, are about as follows:· In 1884, Mrs. Latshaw, the defendant, engaged in the business of cultivating and raising flowers and plants for sale. Her greenhouse and the heating apparatus, which was a part of it, stood partly upon each of two lots owned by J. C. Latshaw, from whom it is undisputed that she had a permit and license for this purpose. About April, 1888, Mr. Latshaw sold one of these two lots to a Mrs. Bain, and about the same time Mrs. Bain bought from Mrs. Lambert a lot immediately adjoining the one purchased from Latshaw, these two constituting the lots for the possession of which this suit was brought. Near the same time of these purchases of real estate by Mrs. Bain, she bought from Mrs. Latshaw the greenhouse and appurtenances located as we have stated, and continued the business in which Mrs. Latshaw was engaged. In December, 1889, Mrs. Bain sold a two-thirds interest in the greenhouse and heating apparatus, and all things connected with the floral business, to one H. C. Webster. A partnership was then formed under the firm name of Bain & Webster, for the carrying on of the floral business, and was so continued until January 30, 1892. Some time after, the precise date not being fixed and not being material, a part or all of the greenhouse was removed so as to be situated entirely upon one or both of the two lots owned by Mrs. Bain, what reconstruction that was necessary being done with the old material and with such new as was required. The firm of Bain & Webster paid rent to Mrs, Bain for the use of the ground occupied by the greenhouse and heating apparatus. On December 30, 1891, after the greenhouse had been so removed entirely upon the lots of Mrs. Bain, and whilst the firm of Bain & Webster was in existence, in possession of the greenhouse and carrying on the floral business, Mrs. Bain executed the deed of trust, through the foreclosure of which the plaintiff claims title. Shortly subsequent to this, on January 30, 1892, Mr. Web-

ster sold his interest, which was a two thirds in the green-
house and business, to a Mr. Fleischer, taking a chattel mort-
gage thereon for deferred payments.   On the same day, Mrs.
Bain executed a lease, in writing, granting to Fleischer &
Bain, and their assigns, the right to occupy the necessary
ground with their greenhouse, heating apparatus, etc., and
giving the right and privilege to the firm, or its assigns, to
remove the greenhouse, heating apparatus and all things per-
taining thereto at the expiration of the lease.   This lease
was recorded.   Thereafter, the firm of Fleischer & Bain con-
tinued to do business.   Sometime afterwards (date not being
material) Fleischer sold one half of his interest to the defend-
ant Mrs. Latshaw, and the firm then became and continued
in business as Fleischer, Bain & Latshaw.   There were sev-
eral sales afterwards by various members of the firm and the
firm changed in part at intervals, but these facts are not ma-
terial.   It finally resulted in Mrs. Latshaw, the defendant,
becoming the sole owner of the greenhouse and the business
and of the heating apparatus.   Afterwards, the trust deed
was foreclosed and trustee's deed executed January 19, 1898,
to the purchaser, who afterwards, prior to the institution of
this suit, executed a warranty deed to the plaintiff.

The first and main question to be determined is one of fact,
namely, was this greenhouse and the heating apparatus trade
fixtures ?   We might content ourselves by saying that the
court found them to be such, and so also did the jury which
it called for advisory purposes, and such finding not being
manifestly against the weight of the evidence, we would de-
cline to interfere with it.   We have, however, gone further
and read the evidence bearing upon this fact, as set forth in
the abstracts, and we are thoroughly convinced that the find-
ing was clearly correct.   The greenhouse was a mere tempo-
rary structure composed of two by four pieces with boards
nailed on the sides and a glass roof.   The whole simply sat
upon the ground.   Possibly, although this does not positively
appear, a few of the posts were inserted in the ground ; but,
if so, only a few inches so as to steady the structure.   The

same was true of the heating apparatus, which consisted of two Hotchkiss hot water furnaces. Everything could have been removed without the slightest damage to the estate. Besides, whilst possibly the intent with which structures of any kind are erected upon real estate should not wholly control, although some cases have even gone so·far as that, yet it is now universally held that such intent may be considered in connection with other evidence to determine the character of the structure. There can be no question about what the intent was in this case. All of the various parties interested during this period of seven or eight years paid ground rent to Mrs. Bain. They were tenants of hers, and in 1892, as we have seen, she executed a written lease to the firm of which she was herself a member, providing, among other things, that at the expiration of the lease the parties might have the privilege of removing the greenhouse and all appurtenances. That the lease theretofore was by parol is immaterial, because such lease was lawful and binding. The written lease was, so far as we can gather from the acts of the parties and the circumstances, but the reduction to writing of what had been the understanding of the parties theretofore. Fleischer succeeded to the rights of Webster, and each succeeding partner to the rights of his predecessor in the business. We think there is no question that they were·trade fixtures, and that the owner had a right to remove them unless for some reason this right had been forfeited. The principles which we have announced have been expressly decided by this court. *Ross v. Campbell*, 9 Colo. App. 38; *Updegraff et als. v. Lesem*, *ante*, p. 297. And they are amply upheld by the numerous well adjudged cases in other juridisctions, a few of which we cite: *Smusch v. Kohn*, 49 N. Y. Supp. 176; *Case v. L' Oeble et al.*, 84 Fed. Rep. 582; *Robertson v. Corsett*, 39 Mich. 777; *Tift v. Horton*, 53 N. Y. 377; *Kelly v. Austin*, 46 Ill. 156.

The plaintiff strenuously contends, however, that the beneficiary in the deed of trust, who was the purchaser at the foreclosure sale, having had no knowledge or notice that this greenhouse was placed upon the premises as a trade fixture,

or that it was being used as such, or that any person other than Mrs. Bain, the grantor in the trust deed, had any interest therein, is entitled to the property. It is immaterial whether the mortgagee had any notice, or not, although there was some evidence to the effect that he did have notice. He could not hold or acquire by virtue of his mortgage any interest except that which Mrs. Bain had, and nothing in the shape of improvements except such as were so attached to the realty as to become a part thereof. Besides, the very character of the structure, and of the business carried on therein, were sufficient to put him upon inquiry. Under the evidence in this case, even if the entire structure had been erected thereon after the execution of the deed of trust, he would have no right to claim or hold the property under the title acquired by foreclosure of the trust deed. *Kelly v. Austin*, *supra*, was precisely such a case, and it was so held in accordance with the view which we have expressed. And so was the case of *Ross v. Campbell*, decided by this court.

Neither can it be contended that the acceptance of the lease of January, 1892, by the firm conducting the floral business, operated as an extinguishment of all rights acquired previous thereto. It was, in effect, merely a continuance of the old tenancy. *Ross v. Campbell, supra*.

It appears that the deed of trust contained not only a description of the lots and the usual language with reference to appurtenances, but that there was written in also the words: " together with all improvements thereon." Plaintiff claims that the insertion of these words shows a specific intent to render subject to the deed of trust everything which stood upon the land, embracing this greenhouse property. This was a deed of trust conveying for certain purposes real estate only. The only reasonable construction of the word " improvements," therefore, is, when used in this connection, such buildings and structures as were attached to the realty in such manner as to become a part of it and under the law a permanent fixture. *Smusch v. Kohn, supra*.

Plaintiff complains that the court refused to give to the

jury various instructions which he requested, and also to submit to the jury a number of questions asked for by him. This being an equitable proceeding, and the jury being called simply for advisory purposes ; the court, not being bound to adopt its findings, had a right to submit to it such questions as it chose, and to give only such instructions as it might see fit.   The refusal to give any instructions, or to submit any questions asked by the plaintiff, was not error.   Even if it had given these instructions, or submitted the questions, it could, as we have said, have wholly disregarded the findings of the jury.

There are other questions raised and discussed, but those to which we have referred are, we think, entirely decisive of the case, and it is not necessary for us to consider the others. We think the judgment of the court was correct, and it will be affirmed.

*Affirmed.*