No. 10,203.

RARE METALS MINING & MILLING CO. *v.* WESTERN COLORADO POWER CO., ET AL.

Decided February 5, 1923.

Proceeding involving the title of fixtures attached to real property.  Judgment for plaintiffs.

*Affirmed.*

1.  REAL PROPERTY—*Fixtures.*  It is a general rule that whatever is affixed to real estate becomes a part thereof and may not be severed and removed without consent of the owner.  To this general rule there are exceptions, one of which is, that the doctrine does not obtain in its fullness as between landlord and tenant.

2. LESSOR AND LESSEE—*Trade Fixtures.* Articles affixed by a tenant to demised premises for the purpose of carrying on the business for which they are leased, are removable by him, however firmly they may be attached, if no material injury to the freehold would result from the removal, which must be made during the tenancy or within a reasonable time thereafter.

3. *Trade Fixtures—Attachment.* The rule that trade fixtures attached to real property by a lessee belong to and may be removed by him, applies equally between an attaching creditor of the lessee and the owner of the fee, and fixtures which the lessee may remove are subject to attachment by his creditors.

4. TRADE FIXTURES—*Intent of Parties—Attachment.* Where it appeared that it was the intention of the lessor and lessee that fixtures attached to real property by the lessee should remain his property, as trade fixtures, they are held to be such, and subject to attachment by creditors of the lessee.

5. MINES AND MINING—*Reduction Works—Trade Fixtures.* Reduction works erected on leased mining property for the treatment of ores to be taken therefrom, held to be trade fixtures belonging to the lessee and subject to attachment by its creditors.

6. EQUITY—*False Statements.* Neither a court of equity nor a court of morals will be quick to reward one who makes a false assertion to another, who is thereby induced to rely upon it to his injury.

*Error to the District Court of San Miguel County, Hon. Thomas J. Black, Judge.*

Mr. PAUL L. LITTLER, for plaintiff in error.

Mr. L. W. ALLEN, Messrs. CATLIN & BLAKE, Mr. J. M. WOY, Mr. EARLE BRYANT, Mr. E. B. ADAMS, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

IN Cause No. 10197, *The Colorado Vanadium Corporation v. The Western Colorado Power Company, et al.,* decided at this Term, the opinion being reported in 73 Colo. 24, 213 Pac. 122, the plaintiff in error here, The

Rare Metals Mining & Milling Company, filed its petition of intervention below, asserting ownership of the property attached in the main action.   Upon final hearing, as the reported opinion shows, the court sustained the attachment and rendered judgment for plaintiffs against the defendant.   In the intervention proceeding the judgment was against the intervener, and in favor of the plaintiffs, except as to certain enumerated property the right to which plaintiffs disclaimed.   Though all the issues were tried below as one case, there were separate judgments, which might well have been brought up for review as one record.   Each of the unsuccessful parties, however, the defendant and the interveners, sued out a separate writ of error, which is being separately prosecuted here. All the counsel in their briefs, in each case, have referred to, and commented upon, the record and briefs in the other, and suggested that we do the same.   As neither record is in itself sufficient or adequate to present a full view of either controversy, and as the one supplements the other, we have properly availed ourselves of the suggestion.

The principal question for decision is whether, under the facts and the applicable law, the properties seized under the attachment writs are, or are not, "trade fixtures" as distinguished from "fixtures" that have become a part of the realty to which they are affixed.   If they are "trade fixtures", they were properly attached as belonging to the defendant lessee.   If "fixtures" of the latter kind, they belong to the intervener, lessor, and were not subject to the seizure.   The trial court held them trade fixtures and we think the evidence sustained the finding, and the judgment rendered was right.

The facts are that in the year 1918, the plaintiff in error, The Rare Metals Mining & Milling Corporation, intervener below, was the owner of vanadium mines and certain buildings thereon, and of a mill site in the town of Sawpit, on which there was an old gold mill that had been used, and was adapted only for treating metallif-

erous ores.   There were some other structures on the mill site.   Being desirous of selling its so-called "vanadiferous" ores under a royalty plan, the intervener made a contract with a Mr. Gardner, its secretary-treasurer, and a director, whereby Gardner was to form a corporation for the purchase of such ores, and of erecting a plant to mill, refine and reduce the products thereof.   The contract contemplated an assignment thereof by Gardner to such corporation, and a lease by the intervener of its mines, mill site and other properties.   No formal lease was executed, but attached to the contract as part thereof was a written memorandum which was treated by the parties as a lease, which set out in detail the terms, which the parties intended to, but did not, incorporate in a formal lease.   The lease was to run for twenty years, with privilege of renewal for an additional twenty years, and contained the usual covenants, as to royalties, and careful mining; $1.00 as a nominal consideration for the demised premises, and the carrying out of the terms of the contract; the lessor to quit-claim the mill or mill site to the lessee when the royalties amounted to a stated sum; and, most important of all in this case, the twelfth clause of the lease, which is in the following language:

"Should the man'f'r., (the lessee in this memorandum was designated as manufacturer), without written consent of the company, default in the terms of this contract for six (6) months, in any one calendar year, then the Company shall have the right to cancel this agreement and shall have the option to purchase the mill or mills of the man'f'r. at an agreed upon or appraised price."

Under these instruments in writing, the Colorado Vanadium Corporation, so formed by Gardner and to which his rights were assigned, as therein provided, took possession of the leased properties.   The evidence tended to show, and presumably the court found, that this corporation, with the knowledge and the tacit or implied consent of intervener, proceeded to tear down the old gold mill, obliterating the same as a structure, except as to an ore

crusher, which still stands. The old mill was built to treat metalliferous, but was not adapted to treat vanadium, ores, and was entirely worthless to the lessee in carrying on its business. The material of which the old mill was composed when the structure was demolished, was removed from the old site and piled up or stored on adjoining ground. The lessee corporation then proceeded to construct on the old mill site, covering the same, and perhaps other space, a new plant or mill which was a substantial structure, adapted for the purpose in hand, being firmly affixed to the soil, and therein installed valuable and expensive equipment and machinery, and proceeded to erect other structures and improvements on the mill site, in connection with its new enterprise, and also upon the Venus lode, one of the claims from which ore to be treated came. All of these structures and improvements constituted, and were used as a unit by the lessee in the conduct of its business and were necessary to comply with the terms of the lease. All this work was done at the sole expense of the lessee corporation and admittedly for the purpose of carrying on the business of treating and refining ores as contemplated by the lease. In building the new plant it may have used some, but not much, of the material of the old gold mill, but we do not consider that fact important in this case. If it, without right, used material that belonged to the lessor, it may be liable in damages for the value of the same, not in this, but in a proper action.

From the time of the assignment of the lease the lessee corporation remained in exclusive possession of the leased premises and conducted thereon the business of mining and reducing vanadium ores until late in the year 1920, when financial embarrassment caused it to cease operation. The lessee was indebted to the different plaintiffs in the combined action, and each of them brought a separate suit, the writ of attachment in each being levied upon the reduction plant, claiming such property as trade fixtures of the defendant lessee. The intervener, lessor,

came into the case claiming by its petition of intervention the same property, or the most thereof, as fixtures; that is, as a part of the real estate to which it was affixed, and of which it held the legal title. Such other facts as are material will be given in the appropriate place in the opinion.

Upon sufficient legal evidence, which is not in serious conflict, the trial court held the properties now in dispute to be trade fixtures. This general finding,—a mixed finding of law and fact,—includes a specific finding of every material fact, within the issues raised by the pleadings, essential to the judgment pronounced on the general finding.

Whether that which was once a chattel but which, by being affixed to the realty, becomes thereby accessory to, and a part of the realty, or still retains its character as a chattel or a trade fixture, has often been before the courts of England and this country. No two cases are exactly alike, hence no general rule applies to every case. It is, of course, a general rule that whatever is affixed to the realty becomes part thereof, and partakes of its incidents and properties and may not be severed and removed without consent of the owner. To this general rule there are exceptions as well established as the rule itself, and one of the exceptions is that this doctrine does not obtain in its fulness as between landlord and tenant. The argument of intervener takes a wide range. Many authorities are cited and discussed at length. Even a meagre resume of them would unduly lengthen this opinion. None of them is decisive of this case. All of them, in their material facts, may easily be distinguished from it. As furnishing the tests by which to ascertain if chattels attached to realty are fixtures, intervener relies upon *Teaff v. Hewitt,* 1 Ohio St. 511, (S. C. 59 Amer. Dec. 634).

They are: 1. Actual annexation to the realty, or something appurtenant thereto. 2. Application to the use or purpose, to which that part of the realty with which it is connected, is appropriated. 3. The intention of the

party making the annexation, to make a permanent accession to the freehold. A similar statement of the law is found in *Cary Hardware Co. v. McCarty,* 10 Colo. App. 200, 220, 50 Pac. 744. These tests invoked by intervener, applied to the facts in this case, would make the attached property trade fixtures. The decisions of this court, and of our Court of Appeals, justify, in every particular, this judgment. In *Ross v. Campbell,* 9 Colo. App. 38, 47 Pac. 465, Judge Thomson, at page 40, quoting from Mr. Washburn, says:

"The rule of law as to removing fixtures is most liberal when applied between tenant and landlord. And, as a general proposition, whatever a tenant affixes to leased premises may be removed by him during the term, providing the same can be done without a material injury to the freehold."

The opinion cites, with approval, *Van Ness v. Pacard,* 2 Peters, 141, 7 L. Ed. 374, where Justice Story, with his usual thoroughness, discusses the doctrine of trade fixtures. In speaking of the exception noted to the general rule, Justice Story said:

"But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purposes of trade. Upon principles of public policy, and to encourage trade and manufactures, fixtures which were erected to carry on such business, were allowed to be removed by the tenant during his term, and were deemed personalty for many other purposes."

In this case it was held that a large house which had been built by a tenant upon demised premises and used in part as a family residence, was a trade fixture. The dwelling house was affixed as firmly to the realty as was the mill and other structures in the instant case. The Supreme Court of the United States, in *Wiggins Ferry Co. v. Ohio & Miss. Ry. Co.,* 142 U. S. 396, 415, 416, 12 Sup. Ct. 188, 194, (35 L. Ed. 1055) in approving the doctrine in the Van Ness case, *supra,* said:

"As between landlord and tenant, or one in temporary possession of lands under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession. * * * The earlier authorities are reviewed in that case by Mr. Justice Story, and the conclusion reached, that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term."

In *Updegraff v. Lesem,* 15 Colo. App. 297, 62 Pac. 342, Judge Thomson quotes with approval part of the foregoing excerpt of the opinion in the Wiggins Ferry Company case, and emphasizes the fact that the exception to the general rule is peculiarly applicable as between landlord and tenant. In *Carper v. Risdon,* 19 Colo. App. 530, 76 Pac. 744, Judge Thomson again applies the doctrine of the Wiggins Ferry Company case, and that of *Updegraff v. Lesem, supra,* and says:

"Articles affixed by a tenant to the demised premises, for the purpose of carrying on the business for which they are leased, are removable by him, however firmly they may be attached."

Of course, the removal must be made during the tenancy, or within a reasonable time thereafter; but that limitation is not important in this case for the term has not yet expired.

In *Royce v. Latshaw,* 15 Colo. App. 420, 424, 62 Pac. 627, 628, referring to the element of the intent of the tenant who erects a building on leased premises, Judge Wilson, says:

"Besides, whilst possibly the intent with which structures of any kind are erected upon real estate should not wholly control, although some cases have even gone so far as that, yet it is now universally held that such intent

may be considered in connection with other evidence to determine the character of the structure."

In *Foote v. Carroll,* 64 Colo. 182, 170 Pac. 954, this court cites with approval the Updegraff case, *supra,* and is direct authority for the proposition that the exception to the general rule, where the relation is that of landlord and tenant, applies equally between the attaching creditor of a lessee and the owner of the fee, or the lessor, and that fixtures which a tenant may remove are subject to attachment. A large list of cases of like import is collated in 13 Amer. & Eng. Encyc. of Law, (2d ed.), p. 644. Such being the law in this jurisdiction and generally throughout this country, let us apply it to the facts of the case we are considering.

The lessee, the Vanadium Company, whose rights are now vested in the attaching creditors, to comply with its contract with the lessor, the intervener, was obliged to erect upon the demised mill site, a mill and a complete reduction plant, and to equip the same for treating vanadium ores, and to build certain other structures upon the vanadium mine from which the ores were to be extracted. All of this property was not only adapted to, but was absolutely necessary for, the carrying on of the trade or business of reducing or refining ores for which the lease was granted, and was to be used and operated as a unit. The structures, equipment and machinery were as firmly attached to the realty as such structures, so to be used, ordinarily are; just as firmly attached as was the dwelling house in the Van Ness case, *supra.* Confining the discussion to the new mill and its equipment, for it is virtually conceded that if they are trade fixtures, (and this would be so even if not conceded), the other articles affixed are also trade fixtures, the further facts are that these structures are substantially new, not substitutes for, or mere additions to, buildings that were on the realty when the lease was given. The erection of such structures did not constitute any part of the consideration for the lease. The chief, if not the only, consideration there-

for, was the royalty which the lessor stipulated for, to be derived from the sale of the products of vanadium ores. These structures were erected at large expense by the lessee to enable it to carry on the business for which it was incorporated. There is nothing in the lease that expressly or impliedly prohibits the lessee from removing these structures during the tenancy, if the removal may be effected without material injury to the freehold. Under the authorities the tenant, or lessee, in this case, might, during the tenancy, remove all of these structures, since no material injury to the freehold would be inflicted. This is so even in the absence of a specific agreement of the parties to that effect.

But the twelfth clause of the written memorandum, a part of the leasing contract, clearly and expressly shows that it was the intention, not only of the lessee, but of the lessor also, that the reduction plant, when erected, was to be a trade fixture and to be the property of the lessee. If, as intervener, the lessor, now says, this plant, by its annexation to its realty, became its property, why did it reserve, in writing, an option to purchase it from the lessee? This provision, in legal effect, recognizes that it was the intention of both parties that the plant should not become accessory to, or a part of, the realty, but should remain chattels and be the property of the lessee, and might be removed during the tenancy, if it could be done—as it could be—without material injury to the realty. Intervener, however, says that the mill and machinery could not be removed without material injury to the old gold mill for which the new mill is only a substitute, or an addition. The court was justified in finding that the lessor knew of, and at the time acquiesced in, the utter destruction of the old mill, before the lessee began to build the new vanadium mill, and that the latter is a new structure throughout. It is injury to the freehold, the realty, not injury to some demolished building, to whose destruction the lessor consented, that might, if it was shown, prevent a removal.

This attached property, except the articles disclaimed by the attaching creditors, belonged to the lessee as the result of an agreement of the parties themselves, each of whom, at the time of the annexation, had an interest in the land or in the articles annexed, (26 C. J. 657), and because it was their intention, independent of the specific agreement, that the property should remain the lessee's as a trade fixture. This was the construction by both parties. Electricity was the motive power for operating the reduction plant. It was furnished by the Western Power Company, one of the plaintiffs. That Company demanded of the lessee Vanadium Company that it make an advance deposit sufficient to cover the estimated amount due for power for sixty days. This demand was referred to the lessee's attorney, who was also attorney for the lessor, and the attorney wrote a letter to the Power Company that his information was that the Vanadium Company lessee owned its plant at Sawpit, valued at an excess of $200,000, entirely free of incumbrances, and if the investigation of the Power Company showed this to be correct, the lessee hoped the requirement, as to the deposit, would be waived. Certainly the object of the lessee was to get the waiver, in which it succeeded. Two weeks later, in another letter to the Power Company, the lessee's attorney said that the Company was on a sound basis, and that its plant at Sawpit was unincumbered. In a third letter several months later, and after a receiver had been appointed to take charge of the Vanadium Company's business, he wrote to the attorney of the Power Company that the Vanadium Company still had valuable properties, evidently referring to the reduction plant. On the witness stand this attorney testified that he had no personal knowledge of the ownership of the reduction plant, and had suggested that the Power Company make an investigation for itself. There is nothing in the record to which our attention has been called as to whether or not any investigation was made by the Power Company. However that may be, since the object of the Vanadium Company lessee was to obtain a

waiver as to the deposit, in which it succeeded, and as the attorney himself testified that his information, as to the ownership of the property, was obtained as the result of a conference that he had with the presidents of the lessor and the lessee,—and he was attorney for both of them,— it does not come with good grace, to say the least, for the Vanadium Corporation, or the lessor, now to ask that a peralty be imposed upon the Power Company which omitted an investigation for itself, but was credulous enough to accept its assurance of ownership.   Neither a court of equity nor a court of morals will be quick to reward one who makes a false or incorrect assertion to another, who is thereby induced to rely upon it to his injury.

This is not the only instance of a construction by the parties.  The lessee, as its owner, took out an insurance policy upon the attached property.  In its tax schedule to the county assessor the property was listed as its property.  In the annual return to the Secretary of State, which our statutes require, the Vanadium Company reported this reduction plant as a part of its property interests.  The same claim of ownership was asserted in the Receivership proceeding.

During a part of the time that the plant was in operation the same man was the secretary or superintendent of both companies, and Gardner, to whom the leasing contract was made, and who assigned it to the Vanadium Corporation which he organized, was at one time a director, both of the lessor and the lessee.  The same person was the attorney of The Rare Metals Company, intervener, and lessor, and of the Vanadium Corporation, defendant and lessee, from the time of their organization.  He appeared as attorney for defendant in the main action, verified the traversing affidavit and contested the attachment on the theory that lessee was the owner of the attached property.  As attorney for defendant lessee he filed an answer to the petition of intervention admitting the averment therein that the intervener lessor was its owner. We have then, not only the express agreement of the par-

ties, their undoubted intention at the time the agreement was made, but also the construction which the parties themselves made of their understanding that this attached property was, and when annexed to the realty was intended to be, the property of the lessee, which it might remove during the tenancy. It is, therefore, subject to the attachments. The judgment, being to that effect, it is affirmed.