No. 15,558.

ANDREWS *v.* WILLIAMS.
(173 P. [2d] 882)

Decided October 21, 1946.

Mr. LAURENCE E. LANGDON, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

THIS is an action for possession or the value of two refrigerating rooms and one heating room installed in a warehouse by plaintiff while he was tenant therein. Plaintiff seeks reversal of the adverse judgment of the trial court. Defendant has not filed any opposing brief. The question presented for determination is whether the refrigerating and heating rooms were removable trade fixtures to which plaintiff was entitled, or had become permanently affixed to the realty.

The building leased by plaintiff was a two-story and basement brick warehouse, in the City of Pueblo, Colorado, with twelve-inch square pillars set every twelve feet apart in the basement and first floor and with no partitions on the upper floors except for office space. Plaintiff leased the premises for the purpose of conducting therein a wholesale produce business and installed on the first floor the two refrigerating rooms made by running double partitions of matched lumber between adjacent pillars, one attached to each side of the pillar, and filling in the intervening space with sawdust. The floors for these rooms were laid on studding above the original floor. They had separate ceilings and the space between these ceilings and the original ceiling also was packed with sawdust. They were attached and supported by nails driven in the pillars and were entered by means of tight cork insulated doors. The heating room in the basement was a room approximately thirty-six feet in length, made of composition board, so constructed as to hold heat and attached to the pillars with lath on the outside of the composition board which was nailed to the pillars.

The court found, in substance, that these rooms were built by the tenant shortly after entering upon the premises without any provision therefor in his lease; that they were constructed for refrigeration of produce and maintaining heat in the handling of other produce, necessary in the operation of the tenant's business; that they were attached to the building "with nails and

screws, which possibly are removable without serious damage or material injury to the original building structure"; that "they were constructed with a certain degree of permanency, which upon inspection appear to be a part of the original structure"; that they "are so constructed that they can be removed only by dismantling and removing them piece by piece, and when so removed, they will become a mere mass of crude materials"; and that they "have sufficient characteristics of permanent improvements, and are so adapted to the use to which the premises had been and were applied when inspected and purchased by defendant as to be considered fixtures attached to the realty which became a component part thereof." Plaintiff challenges the legal conclusion of the trial court based upon the evidence and findings hereinabove summarized.

There are no fixed and universal tests, by application of which the status of improvements as fixtures can be determined. There are, however, certain recognized guides for determination, such as the nature and character of the thing annexed, the manner of annexation and resultant injury by its removal, the intent of the party in making the annexation, the purpose of annexation, the adaptability of the thing attached, to the use of the land, and the relation of the party making it, to the freehold.

These rooms constructed in the bare interior of the warehouse were plainly accessory in character and did not become such an integral part of the premises as to lose their identity as separate things and have their individual existence completely merged in that of the realty. As established by the undisputed evidence and reluctantly admitted by the court in the findings, they were so attached that they could be removed without material injury to the original structure and their removal would leave the building just as it was when the tenant entered into possession.

The trial court emphasizes the fact that removal could

482

only be made by dismantling piece by piece so that they would "become a mere mass of crude materials." However, the evidence was that this material, the lumber and sawdust, could be saved, and the room rebuilt elsewhere. In some jurisdictions such necessity of dismantling has been held to preclude the tenant's right of removal, but other jurisdictions, including our own, hold to the contrary. In *Ross v. Campbell*, 9 Colo. App. 38, 47 Pac. 465, it was held that a tile floor laid by a tenant for the purpose of attracting customers and to benefit her trade, with the intention to remove it at the end of her tenancy, was a trade fixture which could be so removed, although upon removal it could only consist of separate pieces of tile. "By some courts, the fact that the removal will destroy the fixture seems not to be regarded as an obstacle to the removal, and it is perhaps difficult to perceive why the landlord should be given the fixture merely because the tenant cannot remove it in its existing form." 2 Tiffany, Landlord and Tenant, p. 1577, §240. The necessity of dismantling is merely relevant to intention and not controlling. *Holy Ghost Catholic Church v. Clinton,* 169 Minn. 253, 211 N.W. 13.

■■ The avowed intent of the tenant in the construction of these rooms was to remove them in case his tenancy should end and he could not sell them to his successors. There is nothing in the evidence to suggest an intent to make a permanent accession to the freehold, nor that the landlord expected it. "The presumption in such case is that the tenant does not intend to enrich the freehold, but makes such additions for his own benefit." 22 Am. Jur., p. 749, §40. The purpose of their erection was not to repair or improve the landlord's property, but rather to provide the equipment necessary to make the premises suitable for the tenant's special business to be conducted therein. These rooms were particularly adapted to the tenant's use rather than to the type of building in which they were installed. The

building was a bare warehouse equally well adapted to many uses. The rooms would be a detriment to the use of the building for many purposes for which it might likely be employed and of benefit only in the case of such a business as that in which plaintiff was engaged; but they were necessary in the conduct of plaintiff's business and, as the trial court found, were built for that purpose. As noted by Justice Story in the leading case of *Van Ness v. Pacard*, 2 Peters 141, 7 L. Ed. 374 (from which we quoted in *Rare Metals Co. v. Power Co.,* 73 Colo. 30, 213 Pac. 124), fixtures erected for the purposes of trade have been held from the earliest time to constitute an exception to the rule that whatever is annexed to the freehold becomes part of it.

■ ■ Most important of all, these improvements were constructed by a tenant as to whom the question of annexation to the freehold must be considered with great latitude. This is particularly true in this jurisdiction where we, and our Court of Appeals, have consistently followed and frequently quoted the rule declared by Mr. Washburn (1 Washburn on Real Property [4th ed.], 27) that, "* * * as a general proposition, whatever a tenant affixes to leased premises may be removed by him during the term, providing the same can be done without a material injury to the freehold." *Ross v. Campbell, supra; Rare Metals Co. v. Power Co., supra; Updegraff v. Lesem,* 15 Colo. App. 297, 62 Pac. 342; *Carper v. Risdon,* 19 Colo. App. 530, 76 Pac. 744; *Foote v. Carroll,* 64 Colo. 182, 170 Pac. 954; *Seaton-Hayden Co. v. Renshaw,* 101 Colo. 342, 73 P. (2d) 999. "The trend of modern decisions is in favor of a more liberal construction in holding fixtures personalty." *Thuma v. Granada Hotel Corp.,* 269 Ill. App. 484. From all these considerations we are impelled to the conclusion that the facts as found by the trial court do not support its judgment and that, as between the original landlord and plaintiff, the items in dispute were trade fixtures which the tenant could remove. Supporting this view is *White*

*Enamel Refrigerator Co. v. Kruse,* 121 Minn. 479, 140 N.W. 114, where a florist's refrigerating room, erected by a tenant in a storeroom in a hotel building, was held a removable trade fixture, although it was constructed so as to help support the balcony under which it stood and was designed to match the finish of the room, wall paneling and balcony, and had the appearance of being a continuation of the wall paneling with the marble base of the room continued around the base of the refrigerator, and was not removable without being taken to pieces; also, *Ward v. Earl,* 86 Ill. App. 635, where lessees of a brick store and basement building, for the purpose of their use in operating a meat market, constructed therein a cold storage room, twelve by fourteen feet in size, with a height of ten to twelve feet; it had double walls with a space between and was constructed in the room from lumber brought there; two by fours were nailed to the wall and floor and it was built against them and on posts nailed to the floor. In its removal plastering was torn off where it was attached to the wall; the floor was splintered where it was nailed thereto, and to permit its removal it was sawed in several pieces. There also was installed by the tenant a room with ceiling and sides made of Georgia pine sheeting, which had to be so torn apart in removal that it would have value only as kindling wood. Both these were held to be trade fixtures, and, as such, removable by the tenant. See, also, *Kimball v. Grand Lodge,* 131 Mass. 59.

It further appears from the evidence, and the trial court found in substance, that after leasing the building, plaintiff remained as tenant during the remainder of his landlord's life, then became a tenant of his estate, and then a tenant of purchasers from the estate, remaining after the expiration of his original lease as a tenant from month to month until defendant purchased said premises when he served notice on plaintiff to vacate, and that thereafter plaintiff remained in the building and paid rent to defendant for a further period of fifteen days.

██ ██ There is lack of uniformity of rule as to the time within which a tenant must remove his fixtures. In the instant case, it is apparent from the testimony that plaintiff continued in possession by permission of his landlord as a tenant under the same terms as in the original lease, except that after plaintiff was served with notice on September 18, terminating the lease and requiring him to vacate the premises on October 1, and after full knowledge on the part of defendant that plaintiff claimed right to remove these fixtures, he was permitted to remain in the premises until October 15 upon payment of an increased rental. In this jurisdiction where the tenant holds over rightfully or under a tenancy which is in substance a continuance of the original lease, his right of removal of fixtures continues. *Ross v. Campbell, supra; Crandall Investment Co. v. Ulyatt,* 40 Colo. 35, 90 Pac. 59; 2 Tiffany, Landlord and Tenant, 1588; Jones, Landlord and Tenant, p. 839, §718. This rule has venerable authority. "In *Penton v. Robart,* 2 East, 88 (102 Eng. Rep. 302), it was further decided, that a tenant might move his fixtures for trade, even after the expiration of his term, if he yet remained in possession; and Lord Kenyon recognized the doctrine in its most liberal extent." *Cameron v. Oakland County Co.,* 277 Mich. 442, 269 N.W. 227. The modern tendency favors tenant's right to remove fixtures notwithstanding the absence of any reservation of such right in a subsequent lease. Anno., 110 A.L.R. 480, at 484.

██ The trial court further found that defendant, when he purchased, did not know that plaintiff claimed the refrigerating and heating rooms as trade fixtures and that from the manner of construction, mode of annexation, the adaptability of use and the purpose for which he desired and purchased the building, he had ample reason to believe that said rooms constituted a component part of the original structure.

As to the rights of a purchaser without notice, the courts again are not in accord, and there are divergent

holdings. The rule in Colorado was established in *Royce v. Latshaw,* 15 Colo. App. 420, 62 Pac. 627. There the tenant constructed a greenhouse and heating plant whereafter the landlord executed a deed of trust conveying the premises as security, under foreclosure of which plaintiff claimed title, insisting that he had no knowledge or notice that the greenhouse was placed upon the premises as a trade fixture or that it was being used as such. Our Court of Appeals said: "It is immaterial whether the mortgagee had any notice, or not, although there was some evidence to the effect that he did have notice. He could not hold or acquire by virtue of his mortgage any interest except that which Mrs. Bain [mortgagor] had, and nothing in the shape of improvements except such as were so attached to the realty as to become a part thereof. Besides, the very character of the structure, and of the business carried on therein, were sufficient to put him upon inquiry." "The majority rule is that a purchaser or mortgagee of land in possession of a lessee is charged with notice of any title the lessee may have to buildings, fixtures, or other property on the premises." Anno., 74 A.L.R. 360. The justice of this rule is well expressed by Mr. Tiffany in 2 Tiffany, Landlord and Tenant, 1614-1616: "But conceding that, as has occasionally been expressly decided, a purchaser should not be affected by a right of removal in a tenant which is unknown to him, it seems that in almost every case the purchaser should be regarded as chargeable, by the fact of the latter's possession of the land, with notice of his rights in this regard as well as of the character and duration of the lease. That is, a purchaser of land in the possession of a tenant should be required to ascertain, by inquiry of the tenant or otherwise, whether the improvements thereon are subject to a right of removal in the tenant. Otherwise, the tenant's common-law right to remove trade or ornamental fixtures would be of a most precarious character, as being subject to annulment at any time, without his consent, by the

making of a conveyance by the landlord to one without actual notice of the tenant's rights."

█ It is further to be noted that the question, as to whether these refrigerating rooms went with the premises, came to the attention of defendant prior to his purchase. He testified that after Littell, the real estate agent, proposed the sale of the building to him, he went over and inspected the building. He said: "I told Littell that the only way I would make this deal would be if these coolers would go with the building, and he said 'all right.'" And plaintiff's instructions for closing his purchase of the property contained the following provision: "It is understood and agreed that there is no consent on the part of the present owners of the property that will allow the present tenants to remove the two built-in refrigerator-rooms now located on the first floor of said property." It is thus apparent that the nature and appearance of the rooms was such as to raise a question in defendant's mind that they might be removable trade fixtures. He had knowledge that plaintiff was, and for many years had been, a tenant in the building and that these fixtures were necessary to adapt the building to the uses of his tenancy. Knowledge of these facts, as was held in *Royce v. Latshaw, supra,* constituted sufficient notice to put him on inquiry of the tenant as to his interests. See, also, *Marker v. Williams,* 39 Cal. App. 674, 179 Pac. 735. There is disputed testimony as to the agent Littell having asked for and received from plaintiff a list of the items claimed by him, which list did not include these fixtures. However, Littell testified that he asked for such list after the property had been sold to defendant, and obtained it sometime subsequent to his request. Accordingly there was no estoppel thereby.

We conclude that the trial court erred in finding against plaintiff and ordering dismissal of the action.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

MR. CHIEF JUSTICE KNOUS does not participate.

MR. JUSTICE BAKKE dissents.